<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

S.B. ATLASS,

                         Plaintiff,

v.

MERCEDES-BENZ USA, LLC,

                         Defendant.

Civ. No.  07-2720 (DRD)

**O P I N I O N**

TRUJILLO, RODRIGUEZ & RICHARDS, LLP
Lisa J. Rodriguez, Esq.
8 Kings Highway West
Haddonfield, NJ 08033

*Attorneys for Plaintiff*

GRAHAM CURTIN, PA
Thomas R. Curtin, Esq.
Kathleen M. Fennelly, Esq.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962

*Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

       Plaintiff, S.B. Atlass ("Plaintiff"), a citizen of Pennsylvania, is the owner of a 2005

Mercedes-Benz ML 350 SUV, which he purchased from Mercedes-Benz Maybach of Devon in

Devon, Pennsylvania.  Plaintiff's SUV came equipped with a "Tele Aid" system, which Plaintiff activated and has used since the time of purchase.  As the putative representative of a nationwide class action, Plaintiff alleges that Defendant violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq., by promoting the Tele Aid system but failing to disclose to buyers of 2002, 2003, 2004, and some 2005 and 2006, model year vehicles that the Tele Aid system would cease working due to changes in the analog wireless service on which his Tele Aid system operates.

Plaintiff alleges that Defendant knew or should have known as early as August 8, 2002, that the analog Tele Aid system would be obsolete by 2008 and that by making affirmative representations regarding the system's ability to operate over advanced wireless networks and by continuing to market the system without disclosing to consumers the system's end date after that date, Defendant has committed consumer fraud.

Defendant, Mercedes-Benz U.S.A., LLC, a wholly owned subsidiary of DaimlerChrysler North America Holding Corporation, is responsible for the sales, service, and marketing of all Mercedes-Benz vehicles in the United States.  Defendant is located in New Jersey and has its principal place of business in Montvale, New Jersey.[1]

Now before the Court is Defendant's motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the only count of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  The motion is directed at Plaintiff's individual claim for relief as Plaintiff has yet to move for class certification.

---

[1] The Court has jurisdiction over this matter pursuant the Class Action Fairness Act, 28 U.S.C. § 1332(d), which will be lost if a class cannot be certified.

2

For the reasons stated below, Defendant's motion is denied.

## I. BACKGROUND

Defendant began marketing Tele Aid systems for its vehicles in 2000.  The Tele Aid system, which combines global positioning and cellular telephone technology, operates over wireless telephone networks.  The Tele Aid system was advertised by Defendant as using advanced wireless communications technology to provide subscribers with emergency road-side assistance, unlock a vehicle's doors, and track stolen vehicles.  After a customer purchases a Mercedes-Benz vehicle containing a Tele Aid system, the customer must subscribe to the Tele Aid service, which is furnished by Defendant's service provider.

Wireless telephone networks operate on either an analog or a digital signal.  When Defendant began marketing the Tele Aid systems, Tele Aid communications were conducted over an analog signal.  Analog Tele Aid systems were installed in Defendant's model year 2002, 2003, and 2004, and some 2005 and 2006 vehicles.  Later vehicles, however, were fitted with Tele Aid systems that had been re-engineered to communicate over a digital signal.

In May 2001, the Federal Communications Commission ("FCC") proposed eliminating the requirement that wireless phone carriers provide analog-based networks.  Defendant, realizing that this change in FCC policy would result in wireless carriers ceasing to provide analog network service, submitted comments to the FCC, objecting to the proposed rule change. In an August 1, 2001, communication, Defendant explained that the FCC's proposed rule change would require Defendant to modify its Tele Aid system, which at the time operated only over analog signals, thereby increasing its cost.  Defendant also stated that it would not be feasible to expect owners of the analog Tele Aid system to return to dealerships for Tele Aid hardware

3

modifications as FCC policies evolved.

Defendant continued to object to the FCC's proposed rule change in 2002. Defendant argued that the hundreds of millions of dollars that had been invested by automobile consumers and manufacturers in analog telematics equipment would become worthless if the FCC's analog service requirement were to be eliminated because Defendant's vehicles, whose Tele Aid systems rely on the analog signal, are intended to be on the road for up to twenty years. Despite Defendant's protestations, on August 8, 2002, the FCC issued a press release announcing its decision to eliminate the requirement that wireless phone carriers provide an analog network after a five-year transition period.

After the FCC's press release, Defendant continued to install analog Tele Aid systems in its vehicles but did not advise consumers that the analog network over which the Tele Aid systems operated might no longer be provided after 2008. In February 2004, Defendant communicated again with the FCC, requesting that the FCC not postpone the effective date of the elimination of the analog network requirement. Defendant, however, continued to sell some vehicles with analog Tele Aid systems through model year 2006.

In February and March 2007, Defendant announced to its analog Tele Aid customers that their analog Tele Aid service would no longer be provided after December 2007. Defendant advised customers that analog Tele Aid systems could be upgraded to operate over a digital network, however, the cost of the upgrade was to be born by the customer. If customers chose not to upgrade their systems, then their Tele Aid service contracts would expire.

## II. DISCUSSION

Plaintiff filed a Class Action Complaint on June 11, 2007, alleging one count of

consumer fraud under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq. ("NJCFA"), which Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant challenges Plaintiff's reliance on the NJCFA, arguing that under New Jersey's choice-of-law rules, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq. ("UTPCPL"), should be applied as the governing substantive law and that under the UTPCPL, Plaintiff has failed to state a claim upon which relief can be granted.

## A.  Standard of Review under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a 12(b)(6) motion, the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, "[t]he inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Center Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly., 127 S.Ct. 1955 (2007).  Abrogating the standard established in Conley v. Gibson, 355 U.S. 41, (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief," the Supreme Court now instructs that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic, 127 S.Ct at 1965.  Thus, the Court is not required to accept as true mere "unsupported conclusions and unwarranted inferences."  Doug Grant, Inc. v. Greate Bay Casino, Corp., 232

F.3d 173, 184 (3d Cir. 2000).

**B. Choice of State Substantive Law**

A federal court sitting in diversity must apply the choice-of-law rules of the forum state to determine the law that will govern the substantive issues of a case.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Thus, courts in the District of New Jersey must apply New Jersey choice-of-law rules in diversity actions.  "New Jersey has a flexible governmental-interest approach to resolving choice of law questions that requires application of the law of the state with the greatest interest in resolving the particular issue."  Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).  New Jersey, guided by the Restatement (Second) of Conflict of Law, uses an issue-by-issue approach when selecting a substantive law.  Id.

New Jersey's governmental-interest test has two prongs.  First, the Court must determine whether an actual conflict exists between the laws of the interested states.  Lebegern, 471 F.3d at 428 (citations omitted).  If the Court finds that an actual conflict exists, then it moves on to the second prong, which assesses "the interests each state has in applying its own laws" and determines "which state has the most significant relationship to the parties and the event."  Id.  If, however, there is no conflict, then the inquiry is over and New Jersey law will be applied.  Id. (explaining that "because New Jersey would apply its own law [when no actual conflict exists], a federal court sitting in diversity must do the same") (citations omitted).

*(1) Existence of an Actual Conflict*

On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the only issue for the Court is whether the plaintiff's complaint has stated a claim on which relief can be granted.  To determine whether an actual conflict exists, the Court must "examin[e] the substance of the laws" and "assess

whether they mandate[] different outcomes." Lebegern, 471 F.3d at 430 (citations omitted).

Thus, to determine the existence of a conflict at the motion to dismiss stage, the Court must

examine the substance of each state's law to see what must be alleged thereunder.  If the pleading

requirements materially differ, then an actual conflict exists and the Court must proceed to the

second step of the governmental-interest analysis.

In this case, the Court must determine whether the pleading requirements of the NJCFA

are in conflict with the pleading requirements of the UTPCPL.  To state a claim for relief under

the NJCFA,[2] a plaintiff's complaint must allege unlawful conduct by the defendant, an

ascertainable loss suffered by the plaintiff, and a causal relationship between the defendant's

unlawful conduct and the plaintiff's ascertainable loss.  Int'l Union of Operating Eng'rs Local

No. 68 Welfare Fund v. Merck & Co., __ A.2d __ , 2007 N.J. LEXIS 1055, at *33 (N.J. Sept. 6,

---

[2] The New Jersey Consumer Fraud Act states:

The act, use or employment by any person of any unconscionable commercial
practice, deception, fraud, false pretense, false promise, misrepresentation, or the
knowing, concealment, suppression, or omission of any material fact with intent
that others rely upon such concealment, suppression or omission, in connection
with the sale or advertisement of any merchandise or real estate, or with the
subsequent performance of such person as aforesaid, whether or not any person
has in fact been misled, deceived or damaged thereby, is declared to be an
unlawful practice . . . .

N.J. Stat. Ann. § 56:8-2.

Any person who suffers any ascertainable loss of moneys or property, real or
personal, as a result of the use or employment by another person of any method,
act, or practice declared unlawful under this act or the act hereby amended and
supplemented may bring an action or assert a counterclaim therefor in any court of
competent jurisdiction . . . .

N.J. Stat. Ann. § 56:8-19.

2007) (citations omitted).  To state a claim for relief under the UTPCPL,[3] however, a plaintiff's complaint must allege that he "justifiably relied on the defendant's wrongful conduct or representation" and that he suffered an ascertainable loss as a result of that reliance.  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004); Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001).

A comparison of the pleading requirements reveals that under both states' law, a plaintiff must allege some type of wrongful or unlawful conduct on the part of the defendant and have suffered an ascertainable loss.  The laws differ, however, on the relationship between the defendant's conduct and the loss that was suffered by the plaintiff.  New Jersey only requires a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss, where as Pennsylvania requires justifiable reliance on the defendant's wrongful conduct.[4]  Because the UTPCPL has a more rigorous pleading requirement than the NJCFA, the Court

---

[3] The Pennsylvania Unfair Trade Practices and Consumer Protection Law states:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action . . . .

73 Pa. Stat. Ann. § 201-9.2(a).

[4] Disagreement exists among some lower Pennsylvania state courts and Pennsylvania federal district courts as to whether reliance is necessary under the UTPCPL's "catch-all" provision, 73 Pa. Stat. Ann. § 201-2(4)(xxi), which is one of the provision under which the Court believes that Plaintiff would bring a claim in Pennsylvania.  See Hunt v. U.S. Tobacco Co., 2006 U.S. Dist. LEXIS, at **5-6 (E.D. Pa. Sept. 11, 2006) (collecting cases).  However, since a federal court must follow state law as announced by the highest state court when the highest court has spoken on the issue, this Court will follow the Pennsylvania Supreme Court's assessment of the pleading requirements under the UTPCPL, which includes reliance.  See Tran v. Met. Life Ins. Co., 408 F.3d 130, 140-41 (3d Cir. 2005) (discussing the UTPCPL's reliance requirement).

concludes that a conflict exists and will proceed to the second step of the governmental-interest analysis.  See Heindel v. Pfizer, 381 F. Supp. 2d 364, 373-74 (D.N.J. 2004) (concluding that a conflict exists between the NJCFA and the UTPCPL).[5]

Plaintiff disputes the conclusion that a conflict exists between the NJCFA and the UTPCPL and calls the Court's attention to two cases to support his contention that no conflict exists between the two laws.  Plaintiff's reliance on these two cases, however, is misplaced.  The first case, Fresh Start Industries, Inc. V. ATX Telecommunications Services, 295 F. Supp. 2d 521 (E.D. Pa. 2003), is from the Eastern District of Pennsylvania.  The Fresh Start court, therefore, applies Pennsylvania choice-of-law rules, which, instead of comparing the substance of the state laws, assesses at the first step whether one jurisdiction's interest would be impaired if its law were not applied.  Id. at 526.  Because of this difference in the first step of the choice-of-law analysis, the Fresh Start court's conclusion that no conflict exists between the NJCFA and the UTPCPL carries little weight when determining whether an actual conflict exists under the first prong of New Jersey's governmental-interest analysis.

The second case on which Plaintiff relies, Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543 (D.N.J. 1998), although from the District of New Jersey, is similarly unpersuasive during this first stage of the choice-of-law analysis.  Rather than examining the substance of each state's law and assessing whether they mandate different outcomes, the Boyes court evaluates

---

[5] Defendant also argues, pointing to Heindel, that the damages provisions of the NJCFA and the UTPCPL create an actual conflict because New Jersey's law requires the assessment of treble damages and attorney's fees, whereas those damages are merely discretionary under Pennsylvania's law.  This difference is nugatory, however, when the issue is whether the Complaint has stated a claim for relief because remedies only become relevant after liability has been established.

each state's interest in having its law applied, which is an analysis that is more appropriately suited for the second prong of New Jersey's governmental-interest test. See Lebegern, 471 F.3d at 429 (explaining the misconception by some courts of how to apply the first prong of New Jersey's governmental-interest analysis).

(2) States' Interest in Applying Their Law

At the second stage of New Jersey's governmental-interest analysis, the Court must determine which state has the greater interest in having its law applied by "looking at each state's contacts to the litigation and assessing the policies behind each state's laws." Lebegern, 471 F.3d at 431 (citations omitted). The four most relevant contacts are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. Id. at 429.

In this case, the injury and the conduct causing the injury both occurred in Pennsylvania, where Plaintiff purchased his vehicle. Although Plaintiff alleges that Defendant advertised the Tele Aid system on its website, Plaintiff does not allege that he consulted Defendant's website in connection with the purchase of his vehicle. Plaintiff is domiciled and resides in Pennsylvania. Defendant is domiciled in New Jersey. If the parties were to have a continuing relationship, it would likely be through the dealership and therefore centered in Pennsylvania.

The NJCFA and the UPTCPL both have similar policy objectives. The NJCFA is designed to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by sellers of goods and services." Heindel, 381 F. Supp. 2d at 375. Similarly, the "underlying foundation" of the UTPCPL is "fraud prevention." Weinberg, 777 A.2d at 446. In

10

passing the UTPCPL, the Pennsylvania legislature meant to "eradicate . . . unfair and deceptive

business practices and to protect consumers by "ensur[ing] the fairness of market transactions."

Commonwealth v. Monumental Prop., 329 A.2d 812, 815-16 (Pa. 1974).

      Thus, having listed the most relevant contacts and examined the policies underlying each

state's consumer protection law, the Court must connect those policies to the relevant contacts to

determine "whether the states' contacts to the litigation align with the policies identified" thereby

giving one state a greater interest in having its law applied.  Warriner v. Stanton, 475 F.3d 497,

502 (3d Cir. 2007).  As a general rule, the Court will apply the law of the jurisdiction where the

injury occurred when the injury and conduct causing the injury occurred in the same jurisdiction.

See Lebegern, 471 F.3d at 431; Restatement (Second) Conflicts of Laws §§ 145 cmt. e, 146 cmt.

c, d.  Only with rare exception will the law of another jurisdiction be applied because "a state has

an obvious interest in regulating the conduct of persons within its territory and in providing

redress for injuries that occur[] there."  Warriner, 475 F.3d at 503.

      In this case, given that both the injury and the conduct causing the injury occurred in

Pennsylvania and that the NJCFA and the UTPCPL have similar policy objectives, the Court

concludes that Pennsylvania has the greatest interest in having its law applied.  Consequently, the

UTPCPL will govern this motion to dismiss.  Cf. Heindel, 381 F. Supp. 2d at 377-78

(concluding, under similar circumstances, that the UTPCPL should be applied).

      Plaintiff contends that, despite the contacts with Pennsylvania, New Jersey has a greater

interest in having its law govern.  While it may be true, as Plaintiff suggests, that Pennsylvania

has no interest in preventing its citizens from taking advantage of New Jersey's consumer

protections laws, the Heindel court concluded that when the injury and the conduct causing the

11

injury both occur in Pennsylvania, Pennsylvania's interest in compensating its citizen and

deterring fraudulent marketing and advertising within its borders supersedes the interest of New

Jersey in governing the conduct of its corporate citizens. 381 F. Supp. 2d at 377-78. This is a

reasonable approach.

**C. Sufficiency of Plaintiff's Allegations**

As previously noted, to state a claim for relief under the UTPCPL, a plaintiff's complaint

must allege that he "justifiably relied on the defendant's wrongful conduct or representation and

that he suffered harm as a result of that reliance." Yocca, 854 A.2d at 438 ; Weinberg, 777 A.2d

at 446.[6] Plaintiff's Complaint asserts a cause of action under the NJCFA. The Court, however,

is not bound by this legal conclusion and it will liberally construe the allegations contained in the

Complaint to determine whether they set forth a claim for relief under the UTPCPL. In doing so,

the Court concludes that Plaintiff has stated a claim upon which relief can be granted.

*(1) Wrongful Conduct*

Wrongful or unlawful conduct is defined broadly by statute as "representing that goods or

services are of a particular standard, quality or grade . . . if they are of another"; "advertising

goods or services with intent not to sell them as advertised"; or "engaging in any other fraudulent

or deceptive conduct which creates a likelihood of confusion or misunderstanding," 73 Pa. Stat.

Ann. §§ 201-2(4)(vii), (ix), (xxi), and has been "interpreted by the courts to be measured by a

standard of misfeasance," Lites v. Great American Ins. Co., 2000 U.S. Dist. LEXIS 9036, at *6

---

[6] Private actions under the UTPCPL may only be brought by persons who "purchase or lease goods or services primarily for personal, family or household purposes." 73 Pa. Stat. Ann. § 201-9.2(a). Although Plaintiff's Complaint does not allege that he purchased his Tele Aid system for personal use, the Court will presume that this is the case.

(E.D. Pa. Jun. 23, 2000).  Plaintiff's Complaint alleges that Defendant "falsely promis[ed] and represent[ed] that its product would provide information and emergency services to consumers through advanced wireless communications technology, even though it knew its product would cease to work during the life of the consumers' cars" and that "Defendant knowingly concealed, suppressed, or omitted the material fact that its Tele Aid systems would become obsolete." (Compl. ¶¶ 36, 37.)  The Court concludes that these assertions allege more than mere nonfeasance, see Lites, 2000 U.S. Dist LEXIS, at **11-17, and therefore that Plaintiff has sufficiently alleged wrongful or unlawful conduct.

Defendant's first argument on this score, that it did not engage in wrongful or unlawful conduct because it had no duty to inform Plaintiff of changes in FCC rules, falls short.  Plaintiff's allegations are not simply that Defendant did not inform him of the FCC rule change, but rather that Defendant, knowing of the FCC's decision to end the requirement that wireless carriers provide an analog network, continued to market the analog Tele Aid system without informing consumers of its potentially brief life span.  The Court has concluded that these contentions sufficiently allege wrongful conduct on the part of the Defendant.

Defendant's second argument, that it was under no obligation to inform Plaintiff of information found in the Tele Aid service contract or publically available information, is similarly unavailing.  The Court of Appeals has held that an insurer cannot "use the explicit language of its insurance policy to defeat the reasonable expectations of an insured," especially when the insured's expectations are "based on the insurer's or its agent's representations," Dilworth v. Met. Life Ins. Co., 418 F.3d 345, 353 (3d Cir. 2005).  Furthermore, a Pennsylvania court has found that there is a duty to speak when "an ordinary purchaser of an automobile does

13

not have access to the same information" as the manufacturer that is consistent with the general purposes of the UTPCPL.  Zwiercan v. GMC, 58 D. & C.4th 251, 259-60 (C.P. Phila. 2002). While this leaves Defendant's precise disclosure obligation somewhat unclear, what is clear is that who knew what when and with what level of certainty are questions of fact.  And, although Defendant's fact-based arguments raise questions about the continuing viability of Plaintiff's claim, it would be inappropriate for the Court to consider them at the motion to dismiss stage, which requires this Court to take the allegations of the Complaint as true.

### (2) Justifiable Reliance

Following wrongful conduct, a plaintiff's complaint must allege justifiable reliance on the defendant's misrepresentations or wrongful conduct.  The Court of Appeals cases applying Pennsylvania law make clear that "every plaintiff asserting a private cause of action under the UTPCPL must demonstrate his justifiable reliance." Tran v. Met. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005) (citations omitted); Dilworth, 418 F.3d at 353-55 (following Tran).  For reliance to be justifiable, it must be reasonable to rely on the representation of another.  Porreco v. Porreco, 811 A.2d 566, 571 (Pa. 2002).  When determining reasonableness, "the relationship of the parties involved and the nature of the transaction" must be taken into consideration.  Tran, 408 F.3d at 135.

In this case, Plaintiff's Complaint alleges that if had he known that his analog Tele Aid system would have become unusable in December 2007, he would have negotiated a lower sales price or selected a different vehicle.  (Compl. ¶ 39.)  Relying, therefore, on the liberal standards of Fed. R. Civ. P. 8(a) and 12(b)(6), the Court concludes that Plaintiff has sufficiently alleged justifiable reliance.

*(3) Ascertainable Loss*

The final element that Plaintiff must allege under the UTPCPL is an "ascertainable loss of money or property." 73 Pa. Stat. Ann. § 201-9.2(a). For a loss to be ascertainable, it must be quantifiable. Plaintiff alleges that he has indeed "suffered [an] ascertainable loss of money or property as a result of Defendant's [conduct]." (Compl.¶ 39.) From this allegation, it can be inferred that Plaintiff, because of the shortened usefulness of his Tele Aid system, has either not receive what he paid for or has overpaid for what he has received. With further evidence, it might be possible to establish a concrete value. Plaintiff has also alleged that he must bear the cost of upgrading his Tele Aid system to accept a digital signal. (Compl. ¶ 32.) It is well established that cost of repair constitutes a quantifiable measure of damages. See Zwiercan, 58 D. & C.4th at 255 n.2. Thus, the Court concludes that these allegations provide a sufficient showing of ascertainable loss to survive a motion to dismiss.

Defendant's argument, that Plaintiff has suffered no ascertainable loss because he has not alleged any problem with his Tele Aid service, again, falls short. Plaintiff is not complaining about the Tele Aid service itself, but rather that Defendant sold him a product, that without analog wireless service, has no value or at least a decreased value. The quality of the Tele Aid service itself is not at issue in this case. The Court has concluded that Plaintiff's contentions, even if they may be difficult to prove, sufficiently allege an ascertainable loss on the part of the Plaintiff.

### III.  CONCLUSION

Therefore, for the reasons set forth above, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be denied. The court will enter an order implementing this opinion.

/s/Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 25, 2007