**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: MERCEDES-BENZ TELE AID CONTRACT LITIGATION | Civ. No. 07-2720 (DRD) |
| | MDL No. 1914 |
| | **O P I N I O N** |

*Appearances by:*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
by: Jonathan D. Selbin, Esq. & Jennifer Gross, Esq.
780 Third Avenue, 48th Floor
New York, NY 10017

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
by: James E. Cecchi, Esq. & Lindsey H. Taylor, Esq.
5 Becker Farm Road
Roseland, NJ 07068

GIRARD GIBBS, LLP
by: Eric H. Gibbs, Esq. & Geoffrey A. Munroe, Esq.
601 California Street, 14th Floor
San Francisco, CA 94108

TRUJILLO, RODRIGUEZ & RICHARDS, LLP
by: Lisa J. Rodriguez, Esq.
8 Kings Highway West
Haddonfield, NJ 08033

*Co-Lead and Liaison Counsel for Plaintiffs*

BRYAN CAVE, LLP
by: Peter W. Herzog III, Esq. & Ketrina G. Bakewell, Esq.
1 Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102

GRAHAM CURTIN, PA
Thomas R. Curtin, Esq.
Kathleen M. Fennelly, Esq.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962

*Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

This matter comes before the Court on a Motion for Reconsideration of the Court's March 15, 2010 Order and Opinion submitted by Defendant Mercedes-Benz U.S.A., LLC ("Mercedes"). Mercedes claims that ruling – a 95-page exegesis covering disparate aspects of the litigation that was prepared in response to the company's request for reconsideration of the Court's April 24, 2009 Opinion and Order certifying a class – suffers from three errors. The first concerns portions of the Court's March 15, 2010 Opinion that Mercedes contends were inaccurate and unfairly critical of its litigation tactics and counsel. Additionally, Mercedes contends that the Court misconstrued the harm at issue in this case. Finally, the company argues that the Court should exclude from the class certified in its April 24, 2009 ruling and refined in its March 15, 2010 decision individuals and entities who sold or otherwise disposed of their vehicles after being informed that their "Tele Aid" service – an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology – would expire for reasons unrelated to that impending expiration. The Plaintiffs concede that individuals and entities who returned leased vehicles prior to the expiration of Tele Aid service due to the expiration of their leases should be excluded, but oppose the company's request that the class be modified to exclude other individuals and entities who sold or disposed of their vehicles after being informed that their Tele Aid service would expire.

For the reasons set forth below, the Motion for Reconsideration will be denied in part and granted in part. The statements in the Court's March 15, 2010 Opinion that Mercedes contends were inaccurate and unfairly critical require modification but were immaterial to the ultimate result of that decision. In fact, they appeared in a section of the ruling granting part of the relief Mercedes sought. Those statements were occasioned by inconsistent arguments advanced by Mercedes during the different stages of this litigation – arguments that the company further refined and reasserted in connection with this Motion while omitting the context in which they were first made. Mercedes's second and third arguments are not properly the basis of a motion for reconsideration. The former deals with a point – the nature of the harm at issue in this case – that was extensively discussed in both the April 24, 2009 and March 15, 2010 rulings. Mercedes may disagree with the Court's characterization of that harm, but such disagreement does not justify reconsideration under Federal Rule of Civil Procedure 60(b). Similarly, Mercedes's contention that individuals who disposed of their vehicles after being informed that their Tele Aid service would soon expire but prior to the discontinuation of that service should be excluded from the class was discussed at length and rejected by the Court in its March 15, 2010 decision. The company may challenge the Court's ruling on that point by means of appeal, but may not do so through a Rule 60(b) motion. In light of the fact that Plaintiffs concede that individuals and entities who returned leased vehicles due to the expiration of their leases after being informed that Tele Aid service would be discontinued but prior to the termination of that service lack standing, however, the Court will modify the class to exclude such individuals and entities.

## I. BACKGROUND

The circumstances underlying this litigation were set forth in detail in the April 24, 2009 decision, see 257 F.R.D. 46 (D.N.J. 2009) (hereinafter "Mercedes I"), and were further

developed in the March 15, 2010 ruling.  See 267 F.R.D. 113 (D.N.J. 2010) (hereinafter "Mercedes II").  For the sake of brevity, the Court incorporates those decisions by reference and will refrain from revisiting the facts contained therein except insofar as they are relevant to the pending Motion.

## A. Plaintiff's Claims

Plaintiffs purchased Mercedes model year 2002-2006 vehicles equipped Tele Aid – an emergency response mechanism which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology.  The Tele Aid systems installed in Plaintiffs' vehicles used an analog signal[1] provided by AT&T Wireless Services, Inc. ("AT&T"), as part of a contract between that company and Mercedes.  Prior to August 8, 2002, federal regulations required wireless carriers to provide both analog and digital signals over their networks.  However, on that date the Federal Communications Commission ("FCC") adopted a rule that abandoned that requirement by stating that carriers would no longer be required to provide analog service after a five-year "sunset period" ending on February 18, 2008.[2]

Mercedes continued to manufacture and sell vehicles equipped with analog-only Tele Aid systems after the FCC's August 8, 2002 rule change, but did not inform its customers that wireless carriers would no longer be required to provide the analog service on which their Tele Aid systems depended after February 18, 2008.  Owners of vehicles equipped with analog-only Tele Aid systems were not personally informed until their Tele Aid subscriptions needed to be

---

[1] Wireless telephone networks operate using either an analog or digital signal.  Although the technology to produce so-called "dual mode" devices capable of using both analog and digital phone signals existed at the time they were manufactured, the Tele Aid systems installed in Mercedes's model year 2000-2004 and some 2005 and 2006 automobiles depended exclusively on analog signals.

[2] Although the FCC finalized its rule change on August 8, 2002, the amendments to the agency's regulations that resulted from that change did not take effect until six months later, on February 18, 2003.  Therefore, the date on which the five-year ended was set as February 18, 2008.

renewed, meaning that in some cases individual subscribers did not receive notice of the FCC rule change and the imminent cessation of their Tele Aid service until late 2007.

The disclosures Mercedes sent to Tele Aid subscribers in 2006 and 2007 were part of a "customer ramp-down" plan initiated in cooperation with AT&T.  In meetings between the two companies as early as August 22, 2002 – a mere 14 days after the FCC's ruling – AT&T made it clear that it would "shut down" its analog network as soon as the requirement that it provide such service expired.  It was not until November 28, 2006, however, that Mercedes stopped selling new vehicles equipped with analog-only Tele Aid systems.  On that date, the companies entered into a contract whereby Mercedes, in addition to halting new vehicle sales, also agreed to stop renewing analog-only Tele Aid Subscriber Agreements after June 30, 2007 and terminate service to all remaining subscribers on December 31, 2007.

In light of the FCC's August 8, 2002 rule change and the aforementioned communications in which AT&T informed Mercedes that it would discontinue analog service as soon as it was allowed to do so, Plaintiffs allege that Mercedes knew or should have known as early as August 8, 2002 that analog Tele Aid systems would become obsolete in 2008, but continued to market those systems without disclosing their future obsolescence to buyers of 2002-2004 and some model year 2005 and 2006 vehicles.  Based on that allegation, Plaintiffs assert causes of action for consumer fraud and unjust enrichment.

## B.  April 24, 2009 Opinion

Following the transfer to this Court of the various cases that make up this multi-district litigation, Plaintiffs filed a Consolidated Class Action Complaint in which they asserted two causes of action – consumer fraud and unjust enrichment – based on the aforementioned allegations and requested that the Court certify a nationwide class pursuant to Federal Rule of

Civil Procedure 23.  In a ruling dated April 24, 2009, the Court granted Plaintiffs' request and certified a nationwide class consisting of:

> All persons or entities in the United States who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and
>
>> (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or
>>
>> (2) purchased an upgrade to digital equipment.[3]

See Mercedes I, 257 F.R.D. at 75.

In doing so, it engaged in a lengthy choice of law analysis and held that New Jersey law applies to both of Plaintiffs' claims:  unjust enrichment and consumer fraud.  See Id. at 55-69.

While undertaking its choice of law analysis in the April 24, 2009 Opinion, the Court specifically noted and rejected a case from this district Agostino v. Quest Diagnostics, Inc., 246 F.R.D. 437, 462 (D.N.J. 2009), in which the Honorable Stanley R. Chesler held that the Restatement test utilized in determining whose law governs consumer fraud claims by four of the six states from which the cases that make up this multi-district litigation were transferred "recognizes that the state in which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant relationship to the parties and the issues in the litigation." Relying on that ruling, Mercedes had argued that "[s]ection 148 of the Second Restatement creates a presumption that the law of the state where the misrepresentation or omission is received and relied on applies unless some other state has a more significant relationship to the

---

[3] The class is represented by 15 named Plaintiffs: Leroy Browning, James Giotis, Richard Hankins, Jack D. Kelley, Karen Marcus, Nicholas Lonzisero, Christian Andrew Pellegrini, Mark Russell, Ashish Sen, Colleen Sen, Cord Shiflet, Michael Leslie Shim, Lois A. Stowers, Robert E. Stowers, and Susan Tuteur.  On June 2, 2008, former Plaintiff S.B. Atlass voluntarily dismissed his claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).  Similarly, former Plaintiff Sandra Levin voluntarily dismissed her claim without prejudice on March 12, 2009.

occurrence and the parties under the principles states in section 6 of the Restatement."  (Def.'s

Notice of Supplemental Authority, March 10, 2009.)  The Court categorically rejected that

assertion, stating that it "relie[d] on an interpretation of the Restatement that is at odds with the

plain meaning of section 148, which calls for such a presumption only in cases where 'the

plaintiff's action in reliance took place in the state where the false representations were made <u>and</u>

received.'"  <u>Mercedes I</u>, 257 F.R.D. at 65-66 (quoting Restatement (Second) of Conflict of Laws

§ 148(1)) (emphasis in original).  It then ruled that, to the extent <u>Agostino</u> applied such a

presumption to statements that were made in a state other than the one in which they were

received and relied upon, the decision in that case was erroneous, stating:

> Although the facts relevant to the consumer fraud choice of law analysis in
> <u>Agostino</u> are largely analogous to those at issue in this proceeding, the application
> of a presumption in favor of the law of each plaintiffs' home state in that case
> does not require such a presumption here.  Rather, after close inspection of text
> Restatement § 148, the Court believes that it erred by applying the first subsection
> of that provision in <u>Agostino</u>.  The alleged misrepresentations which formed the
> basis for the plaintiffs' consumer fraud claim in that case were made as part of a
> billing scheme utilized by Quest Diagnostics, Inc. ("Quest"), a corporation
> headquartered in New Jersey.  Like Mercedes, Quest operated throughout the
> United States, and the plaintiffs in <u>Agostino</u> sought certification of a nationwide
> class.  Yet despite its holdings that (1) "the purportedly illegal billing practices …
> emanated from New Jersey" and (2) the plaintiffs relied on the alleged
> misrepresentations "in their home states," the Court applied Restatement § 148(1)
> in determining which state[] had the "most significant relationship" with the
> plaintiffs' consumer fraud claim.  In doing so, the Court ignored section 148(2),
> which applies in cases where the "plaintiff's action in reliance took place in whole
> or in part in a state other than that where the false representations were made."

<u>Id.</u> at 66.

In other portions of its April 24, 2009 Opinion, the Court engaged in a detailed analysis

of the nature of the harm allegedly suffered by the Plaintiffs.  While discussing the concept of

"ascertainable loss" – an element that must be proven as part of a consumer fraud action under

New Jersey law – the Court stated that:

By limiting their proposed class to vehicle owners who subscribed to analog Tele Aid service until being told that service would be discontinued at the end of 2007 or purchased a digital upgrade, Plaintiffs have effectively established ascertainable loss.  Mercedes acknowledged in its submissions to the FCC that Plaintiffs' Tele Aid systems were "embedded in [] automobile[s] designed to last up to 20 years."  (Munroe Decl. Ex. 1 at 6.)  Each member of the proposed class demonstrated his or her intention to utilize the system by continuing to subscribe until being informed that analog service would be discontinued at the end of 2007, and some Plaintiffs went so far as to purchase a digital upgrade in order to assure that they could continue to use Tele Aid.  Thus, each class member got something less than he or she was promised:  a vehicle that was meant to last up to 20 years, but contained a Tele Aid system that would become useless at the end of 2007.

Id.

Elsewhere, the Court characterized the harm at issue in this case while discussing Plaintiffs'

burden of demonstrating causation with respect to their consumer fraud claim:

Plaintiffs do not allege that, but for the alleged misrepresentations, they would not have purchased their vehicles.  Nor do they contend that analog Tele Aid service would have been available after 2007 if not for Mercedes's alleged misconduct; AT&T stopped providing analog service because the FCC rule change removed the requirement that it do so, not because of any statement made by Mercedes. Plaintiffs simply claim that they did not get what they paid for – that because of Mercedes's alleged wrongdoing, they did not know that the Tele Aid systems in their automobiles would become useless long before the vehicles aged to such a degree that they were no longer drivable.  Therefore, Plaintiffs will not need to prove at trial that each individual class member relied on Mercedes statements relating to Tele Aid when purchasing their vehicles.

Id. at 74.

## C.  Subsequent Developments

Following the Court's April 24, 2009 ruling certifying the aforementioned class,

Mercedes petitioned the Court of Appeals for the Third Circuit for interlocutory review

pursuant to Federal Rule of Civil Procedure 23(f).  On June 4, 2009, a panel of that Court

summarily denied the company's request.

On July 1, 2009, the parties filed a joint status letter in which they noted a dispute

relating to whether Mercedes was required to provide certain information that Plaintiffs

contended was necessary to send notice of the action to potential class members as required by Federal Rule of Civil Procedure 23(c)(2)(B).  Plaintiffs had requested that Mercedes provide a list of individuals who subscribed to analog Tele Aid Service until being sent a letter in 2006 or 2007 informing them that such service would be discontinued at the beginning of 2008. Mercedes asserted that such a list would include at least four categories of individuals that it did not believe were included in the class defined by the Court's April 24, 2009 ruling: (1) those who sold their vehicles prior to receiving the notice letter, (2) those who sold their vehicle after receiving the notice but prior to the discontinuation of service, (3) those who chose voluntarily not to renew their Tele Aid service for reasons unrelated to its impending obsolescence, and (4) those who retained their vehicle until analog Tele Aid service was discontinued but have since sold or otherwise disposed of the car.  On the basis of that assertion, Mercedes claimed that the class notice should be limited to Tele Aid subscribers whose service was discontinued during the first few months of 2008.  Plaintiffs pointed out that the class defined by the Court's April 24, 2009 ruling included all individuals who "subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007," and argued that the list proposed by Mercedes would impermissibly exclude any potential class members whose service was terminated as part of the company's "customer ramp-down" plan in which it terminated service to several thousand subscribers during the last six months of 2007.

In order to help settle that dispute, the Court on July 14, 2009 entered an Order directing each party to file a brief outlining its arguments as to how, if at all, the class definition should be clarified.  As specified in the Order, the Plaintiffs filed their brief on July 17, 2009, and Mercedes did so ten days later.[4]

---

[4] In light of the fact that the dispute regarding the scope of the class was first raised by Mercedes, the Court will for the sake of simplicity refer throughout this Opinion to those submissions as

While the Motion for Clarification of the Class Definition was pending, the Court of Appeals decided an interlocutory appeal from a decision by another judge on this Court, the Honorable Dennis M. Cavanaugh, certifying a nationwide class of plaintiffs and applying the NJCFA in an action for consumer fraud.  In an unpublished Opinion, the Court of Appeals vacated the Order certifying the class and remanded for further proceedings.  See Nafar v. Hollywood Tanning Sys., Inc., 339 F. App'x 216 (3d Cir. Aug. 5, 2009).  In doing so, it noted that since Judge Cavanaugh's decision certifying the class, the New Jersey Supreme Court had adopted the Restatement's "most significant relationship" test for resolving choice of law disputes, and discussed the portion of Agostino in which Judge Chesler held that Restatement § 148(1) created a presumption in favor of applying the law of the home state of each of the plaintiffs in that case.  See Id. at *4-5.

Contending that the Court of Appeals had, by discussing Agostino, adopted that case's holding that the presumption contained in Restatement § 148(1) applies to situations where, as here, a defendant allegedly made misrepresentations or omissions in New Jersey that were received by the plaintiffs in other states, Mercedes on August 31, 2009 moved to decertify the class.  The Court held combined oral arguments on both the Motion for Clarification of the Class Definition and the Motion to Decertify on October 5, 2009.

**D.  March 15, 2010 Opinion**

In a ruling dated March 15, 2010, the Court denied Mercedes's Motion to Decertify the Class.  In doing so, it noted as a preliminary matter that Nafar could not have changed the applicable law because it was designated as a non-precedential opinion ("NPO") under the operating rules of the Court of Appeals.  Mercedes II, 267 F.R.D. at 134.  Therefore, the Court

---

Mercedes's Motion for Clarification of the Class Definition and the Plaintiffs' opposition to that Motion.

reasoned that the company's request for decertification was a Motion for Reconsideration of the April 24, 2009 ruling pursuant to Federal Rule of Civil Procedure 60(b).  Id. at 135.  In light of the fact that the Court of Appeals had already denied Mercedes's petition for leave to file an interlocutory appeal of that decision under Rule 23(f) – and in doing so had implied that it did not suffer from "a clear error of law" or create the likelihood of "manifest injustice" that would justify reconsideration – the Court ruled as a matter of first impression that a district court may not "entertain[] a motion for reconsideration of an order certifying a class after a request for interlocutory review of that order pursuant to Rule 23(f) [is] denied."  Id.  To do so, it stated, "would allow litigants to, at least in theory, receive relief from a district court that has already been denied by a court of appeals." – a result that "the hierarchy on which our federal judicial system is based … cannot countenance."  Id.

As an alternative ground for its March 15, 2010 ruling denying Mercedes's Motion to Decertify the class, the Court engaged in an extensive analysis of the company's substantive arguments.  See Id. at 135-36 ("Since the Court's holding that it cannot grant reconsideration of its April 24, 2009 ruling arises out of a procedural issue of first impression on which there is no guiding case law, it is only prudent that the merits of the Motion to Decertify the Class be considered as an alternative ground for today's ruling.").  First, it addressed the company's contention that it erred in its April 24, 2009 choice of law analysis by refusing to follow Agostino in applying a presumption in favor of the law of each Plaintiff's home state pursuant to Restatement § 148(1).  That argument was based largely on Mercedes's claim that, in its ruling in Nafar, the Court of Appeals "adopted Agostino and affirmed that Section 148(1) of the Restatement applies in cases like this one."  (Def.'s Br. Supp. Mot. Decertify 4.)

The Court rejected that argument for two reasons.  First, it ruled that, because <u>Nafar</u> was issued as an NPO, it was not binding on future decisions and could not have "adopted" <u>Agostino</u>'s holding that Restatement § 148(1) applies in cases where the alleged misrepresentations were made and received in different states.  <u>See</u> <u>Mercedes II</u>, 267 F.R.D. at 138-39.  Additionally, the Court held that, even if <u>Nafar</u> had been issued as a precedential decision, that ruling did not endorse <u>Agostino</u>'s substantive holding.  Rather, <u>Nafar</u> cited <u>Agostino</u> merely as an example of the two-step inquiry courts must apply when determining which state has the "most significant relationship" to a claim.  <u>Id.</u> at 141 ("<u>Nafar</u>'s citations to <u>Agostino</u> are best viewed as using the latter case as an example of the process that a district court must follow in completing its choice of law analysis under the "most significant relationship" test rather than an adoption of the latter case's substantive holding.").  In summarizing its reasoning, the Court stated:

> [T]hat <u>Nafar</u> did not "adopt" <u>Agostino</u>'s holding is supported by the fact that the Court of Appeals chose to issue its ruling in the former case as an NPO, which it would almost certainly not have done had it intended for that ruling to be followed in future cases.  Furthermore, the question of which subsection of Restatement § 148 applies to consumer fraud actions in which the misrepresentations at issue were made and received in different states was not posed by the appeal in <u>Nafar</u>, and any statement on that point would have been unnecessary to the Court's narrow ruling that the District Court did not complete an adequate choice of law analysis.  Finally, the reading of <u>Nafar</u> urged by Mercedes asks this Court to assume that the Court of Appeals exceeded its authority in that case by modifying the state choice of law rules of New Jersey.  In light of the fact that <u>Nafar</u> never explicitly endorsed <u>Agostino</u>'s holding, such an assumption is unwarranted.

<u>Id.</u> at 143 (internal citations omitted).

Next, the Court rejected Mercedes's argument that it failed to conduct an individualized choice of law analysis for each Plaintiff in its April 24, 2009 ruling.  <u>See Id.</u> at 143-46.  In doing so, it held that Mercedes, by addressing its arguments to whether the alleged misrepresentations

and omission at issue in Plaintiffs' consumer fraud claim affected their decisions to purchase

their vehicles, had misconstrued the harm at issue in this case.  Id. at 144-45 (quoting (Def.'s Br.

Supp. Mot. Decertify 12) ("The only omissions that could be at issue in [the Plaintiffs']

individual cases are those that could have affected the purchase decision, since an omission that

would not have affected the purchase decision could not be the cause of any legally-recoverable

damages.")).  In an attempt to correct that misunderstanding, the Court stated that:

> The harm at issue in this litigation … does not arise out of the Plaintiffs' purchase
> of their vehicles, but rather their decision to subscribe to Tele Aid service for
> those vehicles. … In other words, the alleged harm in this case is that Plaintiffs
> were induced to subscribe to and utilize Tele Aid Service based on their belief
> that such service would continue throughout the life of their vehicles – a belief
> that they claim Mercedes nurtured through misrepresenting or omitting
> information on the FCC ruling and the impending discontinuation of analog
> service.

Id. at 145 (internal citations and quotations omitted).

Additionally, the Court included the second of the two excerpts from its April 24, 2009 Opinion

above, see supra at I(B), in which it articulated a consistent view of the harm at issue.  Id.

(quoting Mercedes I, 257 F.R.D. at 74).

In another section of its March 15, 2010 Opinion, the Court addressed Mercedes's

contention that it had failed in its April 24, 2009 Opinion to consider variations in the class

members' individual knowledge relating to the impending obsolescence of analog-only Tele Aid.

See Mercedes II, 267 F.R.D. at 151-59.  That argument was based largely on the company's

claim that the Court did not take into account various disclosures provided in the Plaintiffs' Tele

Aid Subscriber Agreements and affixed to the windows of pre-owned vehicles sold after

December 2006.  The Court rejected Mercedes's contention the disclosures in the first category –

those contained in the Subscriber Agreements – were sufficient to inform Plaintiffs of the

impending obsolescence of analog-only Tele Aid.  In doing so, it noted that those disclosures

were phrased in the hypothetical:  they only informed consumers that Tele Aid service would be

unavailable "[i]f the wireless carrier terminates or restricts analog services."  See Id. at 154-55

(quoting the three iterations of disclosure contained in the Plaintiffs' Subscriber Agreements)

(emphasis in original).  The Court then stated that:

> In asserting that the hypothetical language contained in the aforementioned
> disclosures was sufficient to inform analog Tele Aid subscribers that their service
> would be discontinued at the end of 2007, Mercedes fundamentally misconstrues
> the nature of the Plaintiffs' consumer fraud claim.  Plaintiffs contend that
> Mercedes knew as early as August 8, 2002 – when the FCC finalized its rule
> change – that analog Tele Aid service would not be available after 2007.  In
> support of that contention, they submitted documentary evidence that AT&T
> informed Mercedes that it would – not might, but would – "shut down" its analog
> network as soon as soon as the requirement that it provide such service expired.
> Based on that document, which was dated August 22, 2002, and the various
> statements made by Mercedes in promoting Tele Aid, the Plaintiffs claim that
> Mercedes committed consumer fraud by failing to inform customers who
> purchased vehicles and subscribed to Tele Aid after August 8, 2002 that their
> service would not be available for the entire life of their cars.  It was not the
> possibility that analog Tele Aid would become obsolete that constitutes the
> "material fact" Plaintiffs claim Mercedes concealed, but rather the certainty that it
> would do so.  Therefore, Mercedes's reliance on the disclosures contained in its
> Subscriber Agreements, which stated only that Tele Aid might not be available, is
> inapposite.

Id. at 155-56 (internal citations omitted, emphasis in original).

In contrast, the Court ruled that the second category of disclosures on which Mercedes

relied – those affixed[5] to the windows of pre-owned vehicles sold after December 2006 –

effectively informed the purchasers of those vehicles that their analog-only Tele Aid systems

would soon become obsolete.  Id. at 156-57.  Those disclosures stated:

> This vehicle is equipped with a Tele Aid unit which was designed to provide
> services over the analog wireless network.  Consistent with a Federal

---

[5] As stated in the March 15, 2010 Opinion, "It is not entirely clear whether such stickers were
actually placed on all pre-owned Mercedes vehicles sold after December 2006.  The company
claims only that it "instructed its dealers" to do so."  Id. at 156 n.21.  In light of Plaintiffs' failure
to allege that such stickers were not actually used, however, the Court "accept[ed] the
implication of Mercedes's argument and … assume[d] that such stickers were affixed to all pre-
owned vehicles sold after December 2006."  Id.

> Communications Commission ruling allowing carriers to shut down the analog wireless network, this device employs analog wireless technology which is no longer supported by the wireless carrier.  In order to continue the availability of the security and convenience benefits of Tele Aid on this vehicle, Mercedes-Benz USA is offering for purchase through and installation by its authorized dealerships analog-to-digital upgrade equipment that will permit the Tele Aid system to operate on the digital wireless network.

After setting forth the content of the disclosures affixed to pre-owned vehicles sold after

December 2006, the Court stated that the company's argument based on those disclosures would

not normally justify a grant of reconsideration pursuant to Federal Rule of Civil Procedure 60(b):

> Mercedes is correct in its assertion that the Court did not consider those disclosures in its April 24, 2009 Opinion.  The reason for that oversight is simple: Mercedes did not raise the issue of the disclosure stickers prior to that ruling. Despite its indignant assertion in connection with the pending Motion that the Court erred by ignoring the disclosure stickers, the company made no reference whatsoever to those stickers in any of its submissions or oral arguments relating to the Motion for Class Certification.  In fact, the first mention of those disclosure stickers came in the company's brief in support of its pending Motion to Decertify the Class, which was filed on August 31, 2009, almost five months after the Court issued its prior ruling.
>
> Normally, the Court would be prohibited from reconsidering its April 24, 2009 judgment based on evidence, such as the disclosure stickers, that a party could have presented during the earlier proceeding but did not.  Allowing a party to achieve reconsideration by doing what Mercedes has done here – essentially, making up new arguments after a judgment has already been made in an effort to challenge a result with which it disagrees – would fundamentally undermine the finality of this Court's rulings and lead to endless relitigation of settled issues.

Id. at 156.

In light of the facts that (1) Mercedes has also moved for clarification of the class definition and

(2) "[i]ndividuals who had actual who had actual knowledge of the impending obsolescence of

analog Tele Aid could not have been harmed" by the omissions on which Plaintiffs premise their

consumer fraud claims, however, the Court ruled that the class should be clarified to exclude

individuals and entities that purchased or leased pre-owned vehicles after December 2006.  Id. at

156-57 (noting that "persons who purchased pre-owned vehicles to which the disclosure stickers

15

discussed above were affixed will not be able to demonstrate causation – an essential element of their claim under the NJCFA.").  In doing so, the Court stated that it did "not wish to reward Mercedes's behavior in failing to present evidence of the disclosure stickers during the prior proceedings relating to class certification, but f[ound] that the goal of narrowly tailoring the class to ensure that only individuals with cognizable claims are included outweigh[ed] the company's litigation tactics."  Id. at 157.

In the final portion of its March 15, 2010 Opinion relevant to the pending Motion to Reconsideration, the Court rejected Mercedes's argument that the class should be narrowed to exclude individuals and entities whose analog Tele Aid service was terminated between June 2006 and the end of that year as part of the company's "customer ramp-down" plan.  See Id. at 159-62.  Mercedes asserted that such individuals and entities lack standing, and therefore their inclusion rendered the class unconstitutionally overbroad.  In doing so, the company noted several categories of individuals and entities included in the class defined by the Court's April 24, 2009 ruling that it claimed did not suffer a cognizable harm, including:

> (1) individuals who were included on the mailing list used to distribute letters informing Tele Aid subscribers that their service would not be renewed, but "who sold or otherwise disposed of their vehicles before" receiving such letters, (2) "individuals who sold or otherwise disposed of their vehicles after receiving one or more of the Analog Termination Letters for reasons unrelated to the loss of Tele Aid service," (3) "those who chose voluntarily not to renew Tele Aid service for reasons of cost, dissatisfaction, or disinterest" after receiving a letter informing them that their service would not be renewed, and (4) individuals who no longer own the vehicle on which their claims are based.

Id. at 160 (quoting (Def.'s Br. Supp. Mot. Clarification 3.))

The Court held that "[t]hose in the first category lack standing, but are not included in the current class definition," but "those in the other three categories suffered an 'ascertainable loss' cognizable under the NJCFA."  Id.  On that basis, it refused to "modify the class to exclude

individuals who subscribed to Tele Aid until receiving a letter informing them that their service would not be renewed simply because their service was terminated prior to December 31, 2007." Id. Doing so, it stated, would "would impermissibly condition the standing of any given class member on whether the company had the foresight to involuntarily terminate his or her Tele Aid subscription prior to the time that AT&T actually stopped providing analog service," thereby allowing Mercedes to "to escape liability to some class members – who suffered the same harm as those who had their service terminated after 2007 – on the basis of actions it took only after it allegedly omitted the material fact of Tele Aid's impending obsolescence." Id. at 160 n.25.

In rejecting Mercedes's argument that individuals who sold or otherwise disposed of their vehicles after being informed of the impending obsolescence of analog-only Tele Aid but before the discontinuation of that service had standing, the Court again noted that the company's contentions relied on a misconception of the harm at issue. It stated:

> [T]he harm at issue in Plaintiffs' consumer fraud claims is not that they were induced to purchase their vehicles by Mercedes's alleged misrepresentations or omissions. Rather, it is that they were induced, based on their expectation that the systems imbedded in their vehicles would continue to function throughout the life of the car, to subscribe to Tele Aid service during the period between their initial purchase and the time at which they were informed – by means of the aforementioned letters sent by the company in 2006 and 2007 – that such service would be terminated. Accordingly, individuals who owned their vehicles and continued to subscribe at the time they received the letter from Mercedes informing them that their service would not be renewed have suffered an "ascertainable loss" and have standing, while those who sold their automobiles or voluntarily discontinued their service before receiving such a letter do not.

Id. at 160-61 (emphasis in original).

## II. DISCUSSION

Mercedes now moves pursuant to Federal Rule of Civil Procedure 60(b) for reconsideration of various portions of the Court's March 15, 2010 ruling. In doing so, the

company contends that three portions of that ruling were erroneous.[6]  First, it argues that the

Court unfairly criticized its counsel and litigation tactics.  Specifically, Mercedes notes that its its

initial brief in opposition to class certification quoted the disclosure stickers affixed to pre-owned

vehicles sold after December 2006.  Based on that fact, it contends that the Court should modify

its ruling to eliminate the statements excerpted above that Mercedes (1) "did not raise the issue

of the disclosure stickers prior to [the April 24, 2009] ruling" and (2) was "making up new

arguments after a judgment has already been made," id. at 156, in its Motion to Decertify the

class.  Mercedes also requests that the Court remove the March 15, 2010 Opinion's reference to

its "litigation tactics."  See Id. at 160.

In addition to arguing that the March 15, 2010 Opinion was unfairly critical of its

counsel, Mercedes asserts that the Court erred by rejecting its arguments relating to the nature of

the harm alleged in Plaintiffs' claims.  The company notes various passages in the Plaintiffs'

Consolidated Class Action Complaint and briefs in support of their Motion for Class

Certification which it contends demonstrate that the harm at issue in the Plaintiffs' claims is the

purchase of their vehicles, not the fact that they were induced to subscribe to Tele Aid.  Based on

those statements, Mercedes contends that the Court's conception of the harm at issue – as

articulated in both its April 24, 2009 and March 15, 2010 Opinions – is erroneous and those

rulings should be reconsidered.  The end result of such reconsideration would be decertification

of the class.

Finally, Mercedes asserts that that Court erred in its March 15, 2010 Opinion by

concluding that "individuals who sold or otherwise disposed of their vehicles after being

---

[6] Mercedes submitted a reply brief in connection with its Motion despite the fact that such briefs
are not permitted under the Court's local civil rules.  See L.Civ.R. 7.1(i).  In a clear violation of
Federal Rule of Civil Procedure 11(a), that brief was not signed by an attorney.  Therefore, the
Court has disregarded the arguments contained in the company's reply brief.

informed that their Tele Aid service would expire at the end of 2007 but prior to the actual

termination of that service have standing, and were correctly included in the class certified by its

April 24, 2009 Opinion." Mercedes II, 267 F.R.D. at 162.  In doing so, the company asserts that

the Court's conclusion was "cannot be reconciled with the facts or law," and contends that:

> [I]f a class plaintiff sold his or her vehicle for reasons unrelated to the loss of
> analog Tele Aid service and received fair market value for the vehicle in that sale,
> that class plaintiff could not have suffered an ascertainable loss – s/he received a
> vehicle with an operating Tele Aid system that worked for as long as the class
> plaintiff owned it and received fair market value for the vehicle in the sale.

(Def.'s Br. Supp. Mot. Recons. 5-6.)

## A.  Standard of Review

In assessing Mercedes's arguments, the Court must apply the standard of review

applicable to requests for reconsideration pursuant to Rule 60(b).  "[I]t is well-established in this

district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts

Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).  As such, a party

seeking reconsideration must satisfy a high burden, and must "rely on one of three major

grounds:  (1) an intervening change in controlling law; (2) the availability of new evidence not

available previously; or (3) the need to correct clear error of law or prevent manifest injustice."

North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a

motion for reconsideration may not be premised on legal theories that could have been

adjudicated or evidence which was available but not presented prior to the earlier ruling.  See Id.

Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to

"matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has

'overlooked.'"  The word "overlooked" is the dominant term, meaning that except in cases where

there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration."  Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A finding of fact suffers from "clear error" only if no reading of the record can support that finding.  United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations omitted). Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings it bases its request were completely without support in the record, or (2) would result in "manifest injustice" if not addressed.  See Grape, 549 F.3d at 603-04; North River Ins., 52 F.3d 1218.  Mere "disagreement with the Court's decision" does not suffice.  P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp.2d 349, 353 (D.N.J. 2001).

## B.  Critical Statements

At first blush, Mercedes's argument relating to the disclosure stickers affixed to the windows of pre-owned vehicles appears compelling.  That argument is correct in one respect: Mercedes did quote the disclosure in its brief in opposition to the Plaintiffs' Motion for Class Certification.  See (Def.'s Br. Opp'n Mot. Class Certification 11-12).  The Court erred by stating otherwise in its March 15, 2010 Opinion.  See Mercedes II, 267 F.R.D. at 156 ("[T]he company made no reference whatsoever to those stickers in any of its submissions or oral arguments relating to the Motion for Class Certification.").  In fact, during the course of these lengthy proceedings, Mercedes mentioned disclosure stickers in one context or another as an exhibit in opposition to one of Plaintiffs' motions and during oral argument.

20

The fact that Mercedes previously mentioned the disclosure stickers does not, however, support its contention in connection with the pending Motion that the Court's criticism of the company's "litigation tactics" in its March 15, 2010 Opinion requires reconsideration of that ruling.  To the contrary, an examination of the context in which the company first cited that disclosure and the arguments it made in connection with its Motion to Decertify the class demonstrates that Mercedes was, in fact, "making up new arguments after a judgment ha[d] already been made in an effort to challenge a result with which it disagree[d]." Id.  In its brief in opposition to the Plaintiffs' Motion for Class Certification, Mercedes stated that it "provided warning stickers" to its dealers starting in December 2006 and "instructed [them] to put th[ose] sticker[s] on the ashtray or glove box of pre-owned vehicles."  (Def.'s Br. Opp'n Mot. Class Certification 10.)  The company did not argue that the dealers complied with that instruction or that any individual who purchased a pre-owned vehicle after December 2006 actually saw the sticker and thus knew of the impending obsolescence of analog-only Tele Aid.  See (Id. at 10-12.)  In fact, Mercedes quoted the disclosure only in connection with its arguments relating to the June 2007 purchase of a pre-owned vehicle by "[p]urported class member Matlosz" – an individual who is not a named Plaintiff in this case and is not included in the class as modified by the March 15, 2010 ruling.  (Id. at 11.)  In doing so, it specifically noted that the dealer from whom Matlosz purchased his vehicle did not affix a disclosure sticker to the car.  (Id. at 12 ("Unfortunately, the dealer from whom Mr. Matlosz purchased his vehicle apparently did not follow Mercedes-Benz's instructions, and Mr. Matlosz never saw this sticker.").  In other words, the arguments Mercedes made relating to disclosure stickers on pre-owned vehicles prior to the Court's April 24, 2009 ruling certifying a class were limited to assertions that (1) the company instructed dealers to include such stickers, but it was unclear whether the dealers complied with

that instruction, and (2) the vehicle purchased by an individual who is not a named Plaintiff in this suit should have included such a disclosure, but did not.

In its Motion to Decertify the class, Mercedes attempted to use the pre-owned vehicle disclosures to demonstrate that common issues of law and fact do not "predominate" as required by Federal Rule of Civil Procedure 23(b)(3).  Unlike in its brief in opposition to the Plaintiffs' Motion for Class Certification, Mercedes did not limit its arguments based on the disclosure to the individual knowledge of Matlosz.  Rather, it argued that the Court's April 24, 2009 decision was fatally flawed because it failed to consider those disclosures with respect to the class as a whole.  (Def.'s Br. Supp. Mot. Decertification 23 ("The [April 24, 2009] Opinion does not explain why individual inquiry is unnecessary to determine which class members purchased used vehicles with warning stickers.").)  In doing so, the company omitted the critical fact – conceded in its earlier filings – that there is no evidence tending to show that dealers actually used those disclosure stickers after being instructed to do so.  Rather, it simply stated that "Mercedes instructed its dealers to place … warning stickers in all pre-owned vehicles."  (Def.'s Br. Supp. Mot. Decertify 22.)  The clear implication of that statement was that such stickers had, in fact, been placed in pre-owned vehicles sold after December 2006.  The Court explicitly noted and accepted that implication.  See Mercedes II, 267 F.R.D. at 156 n.21.  Thus, Mercedes was, in effect, making a new argument.  Where before it had contended that the pre-owned vehicle disclosures might have been pertinent to the individual knowledge of one person, it later asserted that those disclosures called into question the Court's predominance analysis with respect to every member of the class.  This was the reason for the Court's criticism of Mercedes's "litigation tactics" in its March 15, 2010 Opinion, but in light of the Court's own factual errors the criticism was unduly harsh and that sentence of the Opinion will be deleted.

It is unclear what other relief, if any, the company seeks.  As discussed above, the Court granted Mercedes's request that the class certified in its April 24, 2009 ruling be modified to exclude individuals and entities that purchased pre-owned vehicles after December 2006.  Id. at 156-57.  In other words, regardless of whether its arguments were "new," the company was successful.  Its pending Motion for Reconsideration does not take issue with the ultimate result of the Court's March 15, 2010 ruling, but rather with the manner in which that ruling was explained, and that has been rectified by this decision.  Rule 60(b) does not allow for reconsideration based on a litigant's disagreement with dicta contained in an earlier ruling.  United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 397 n.4 (3d Cir. 2003) (applying the standard for reconsideration to decisions by different appellate panels and stating that "[t]he doctrine does not apply to dicta."); North River, 52 F.3d at 1218 (stating the three grounds on which reconsideration may be granted).  Therefore, since the critical statements on which Mercedes premises its pending Motion for Reconsideration were unnecessary to the Court's ultimate holding, those statements cannot serve as a basis for granting reconsideration of the March 15, 2010 ruling.

At oral arguments relating to the pending Motion, counsel for Mercedes expressed concern that the Court's statements in its March 15, 2010 Opinion may have a negative effect on the professional reputations of the attorneys involved with this case.  (Hr'g Tr. 5:9-18.)  While the Court believes that concern to be overstated in light of the relatively innocuous nature of its statements, which in any event will be removed, it wishes to note that counsel for both sides have conducted themselves competently and congenially throughout the course of this litigation.  The statements with which Mercedes takes issue were not intended as personal criticism of any attorney; they were meant simply to convey that Mercedes's arguments in its Motion to

Decertify the class relating to the pre-owned vehicle disclosures differed from those made earlier in the litigation, and therefore could not form a proper basis for reconsideration. The Court will further modify its March 15, 2010 ruling to remove the paragraph in which it erroneously stated that Mercedes "made no reference whatsoever to [the pre-owned vehicle disclosure] stickers in any of its submissions or oral arguments relating to the Motion for Class Certification." Mercedes II, 267 F.R.D. at 156. In place of that paragraph, the Court will substitute the following:

> Mercedes is correct in its assertion that the Court did not consider those disclosures in its April 24, 2009 Opinion. The reason it did not is simple: in its brief in opposition to the Plaintiffs' Motion for Class Certification, the company raised the issue of those disclosures only with respect to one individual who is not a named Plaintiff and will be excluded from the class as modified by today's decision. Moreover, Mercedes presented no evidence that the disclosure stickers were actually used. To the contrary, it claimed only that it "instructed" its dealers to affix them to all pre-owned vehicles starting in December 2006. It now implies that the stickers were actually used and led to widespread variations in the class members' individual degrees of knowledge relating to the impending obsolescence of analog-only Tele Aid.

As discussed above, that modification will have no effect on the ultimate result of the March 15, 2010 decision, which excluded all individuals and entities that purchased or leased pre-owned vehicles after December 2006 from the class based on the Court's finding that the disclosure stickers were effective in informing them of the impending obsolescence of analog-only Tele Aid.

## C.  Characterization of Harm

Mercedes's second argument – that the Court misconstrued the harm alleged by the Plaintiffs in its April 24, 2009 and March 15, 2010 rulings – cannot serve as a basis for reconsideration of those rulings. Mercedes introduces no new evidence. Nor does it contend that there has been an intervening change in law or identify any clear error in the Court's earlier

decision.  Rather, it simply argues that the portions of those rulings in which the Court discussed

the nature of the harm at issue were wrong.  Such assertions cannot form a proper basis for

reconsideration pursuant to Rule 60(b).  <u>North River</u>, 52 F.3d at 1218 (A motion for

reconsideration must be premised on "(1) an intervening change in controlling law; (2) the

availability of new evidence not available previously; or (3) the need to correct clear error of law

or prevent manifest injustice."); <u>P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.</u>, 161 F.

Supp.2d at 353 ("A party seeking reconsideration must show more than disagreement with the

Court's decision.").  Therefore, the Court reiterates the holdings set forth in its April 24, 2009

and March 15, 2010 Opinions relating to the nature of the harm at issue in Plaintiffs' claims.

Even if the Court considered the merits of Mercedes's argument, the statements in

Plaintiffs' Consolidated Class Action Complaint and earlier filings on which the company relies

would not require reconsideration of the March 15, 2010 and April 24, 2009 rulings.  As those

rulings made clear, the "ascertainable loss" at issue in this litigation is the fact that Plaintiffs

were induced to subscribe to Tele Aid, not the purchase of their vehicles.  In their Consolidated

Class Action Complaint, Plaintiffs repeatedly stated that their claims were based on the fact that

their "analog-only Tele Aid devices … bec[a]me obsolete during the useful life of the vehicles in

which they were installed."  (Consol. Class Action Compl. ¶ 67); <u>see also, e.g.</u>, (¶ 86 (Mercedes

failed to disclose to Plaintiffs "that they would need to incur significant costs to repair and/or

replace the analog-only Tele Aid system for the system to continue to provide emergency

services"), ¶ 90 ("Mercedes has been unjustly enriched in retaining the payments paid by

Plaintiffs and the Class members for the Tele Aid systems and in avoiding the financial

obligations associated with providing the digital upgrade of the Tele Aid systems").)  Those

statements were sufficient to give Mercedes notice of the grounds on which this litigation is

based.  The Court's statements in its earlier rulings did not modify those grounds, but rather clarified that any eventual recovery by Plaintiffs will be limited to the costs associated with fulfilling their expectation of a functioning Tele Aid system.  See Mercedes I, 257 F.R.D. at 73-74 (discussing the nature of the harm at issue with respect to damages).

## D.  Standing

Mercedes's final argument is yet another invalid attempt to relitigate issues that have already been decided.   The company asserts that the Court erred in its March 15, 2010 Opinion by concluding that "individuals who sold or otherwise disposed of their vehicles after being informed that their Tele Aid service would expire at the end of 2007 but prior to the actual termination of that service have standing, and were correctly included in the class certified by its April 24, 2009 Opinion."  Mercedes II, 267 F.R.D. at 162.  In reaching that decision, the Court engaged in an extensive discussion of Mercedes's arguments to the contrary, which were fully briefed and presented in connection with its earlier motions.  See Id. at 159-62.

In asserting that the Court's standing analysis was erroneous, Mercedes utterly fails to meet the criteria for achieving relief under Rule 60(b) – the standard for reconsideration that was set forth in the very ruling the company now challenges.  See Id. at 135.  Mercedes has not alleged an "intervening change in controlling law" or presented "new evidence not available previously."  North River, 52 F.3d at 1218.  To the contrary, its arguments in connection with the pending Motion are essentially identical to those it made in its earlier filings.  Nor has the company demonstrated any "clear error" in the Court's March 15, 2010 ruling or shown that "manifest injustice" would result if reconsideration is denied.  See Id. (setting forth the three grounds on which a litigant may move for reconsideration).

Mercedes has twice challenged the Court's April 24, 2009 ruling certifying a class – first through its Motion to Decertify, which the Court construed as a request for reconsideration pursuant to Rule 60(b), see Mercedes II, 267 F.R.D. at 135, and now through a second Motion for Reconsideration.  As discussed in the March 15, 2010 ruling, the first of those challenges was not based on one of the three criteria – "(1) an intervening change in controlling law, (2) … new evidence not available previously, or (3) the need to correct clear error or prevent manifest injustice," North River, 52 F.3d at 1218 – that must be shown in order to achieve such relief. Nor is the pending Motion.  Having failed in its first attempt, Mercedes may not endlessly prolong this litigation by arguing it is entitled to reconsideration based on perceived errors in the March 15, 2010 ruling.  Allowing it to do so would "fundamentally undermine the finality of this Court's rulings and lead to endless relitigation of settled issues."  Mercedes II, 267 F.R.D. at 156 (citing Yureko v. Port Auth. Trans-Hudson Corp., 279 F. Supp.2d 606, 609 (D.N.J. 2003) ("[M]ere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].… Thus, the motion may address only dispositive factual matters or controlling decisions of law that were presented to, but not considered by, the court in the course of making the decision at issue.") (internal quotations omitted); Resorts Int'l, 830 F. Supp. at 831 n.3 ("We are in fact bound not to consider such new materials, lest the strictures of our reconsideration rule erode entirely.") (emphasis in original)).

In addition to arguing that the standing analysis contained in the March 15, 2010 decision was erroneous, Mercedes argues for the first time in its pending Motion for Reconsideration that the class certified by the April 24, 2009 ruling and modified by the March 15, 2010 decision is overbroad because it includes individuals who leased vehicles equipped with analog-only Tele Aid systems and received notice of the impending obsolescence of those systems, but whose

lease terms ended before their service was discontinued.  Normally, the Court would be prohibited from modifying its March 15, 2010 judgment based on such an argument, which could have been made prior to that ruling and therefore does not meet the criteria for reconsideration under Rule 60(b).  <u>North River</u>, 52 F.3d at 1218.  Plaintiffs have conceded, however, that such a modification is appropriate in this case.  (Pls.' Br. Opp'n Mot. Recons. 9 ("Plaintiffs agree … that those individuals who leased their vehicles and whose lease periods came to an end after the notification of the termination of analog service but prior to the date of the actual termination of analog service may be properly excluded from the class.").) Therefore, the Court will modify the class accordingly.

## III.  CONCLUSION

For the reasons set forth above, Mercedes's Motion for Reconsideration is granted in part and denied in part.  The March 15, 2010 Opinion, insofar as it refers to the disclosure sticker issue, will be modified in accordance with this Opinion.  The class certified by the Court's April 24, 2009 ruling and modified by the March 15, 2010 decision is further modified to include:

> All persons or entities in the United States who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 22, 2002, and
>
> > (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or
> >
> > (2) purchased an upgrade to digital equipment,
>
> except those who:
>
> > (1) purchased or leased a pre-owned Mercedes-Benz vehicle in December 2006 or thereafter, or
> >
> > (2) leased a Mercedes-Benz vehicle for a term that expired prior to the discontinuation of Tele Aid service.

The Court will enter an Order implementing this Opinion.


  **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  July 22, 2010

29