# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: MERCEDES-BENZ TELE AID CONTRACT LITIGATION | Civil Action No. 07-2720 (DRD) MDL No. 1914 |

-------------------------------------------------------------------------------------------------

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

-------------------------------------------------------------------------------------------------

Jonathan D. Selbin
Jennifer Gross
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson St., 8th Floor
New York, NY  10013
(212) 355-9500

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, NJ  07068
(973) 994-1700

Eric H. Gibbs
Geoffrey A. Munroe
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA  94108
(415) 981-4800

Lisa J. Rodriguez
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
258 Kings Highway West
Haddonfield, NJ  08033
(856) 795-9002

*Co-Lead and Liaison Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...............................................................................4

    I.     Factual Background ...........................................................................4

    II.    Litigation History.............................................................................4

         A.     Initial Filings and Consolidation .............................................4

         B.     Class Certification and Subsequent Motion Practice ..............6

         C.     Research and Discovery...........................................................8

              1.     Early Discovery Efforts ...............................................8

             2.     Written Discovery........................................................9

             3.     Depositions ................................................................11

             4.     Expert Reports ...........................................................11

             5.     Class Mailing List.....................................................12

         D.     Class Notice..........................................................................12

         E.     Mediation..............................................................................13

    III.    The Proposed Settlement ...............................................................14

         A.     Settlement Class ...................................................................14

          B.     Relief To The Class ..............................................................15

              1.     Group 1......................................................................15

             2.     Group 2......................................................................16

              3.     Group 3......................................................................17

         C.     Release To MBUSA ..............................................................17

         D.     Settlement Notice..................................................................18

         E.     Attorneys' Fees and Expenses...............................................19

         F.     Class Representatives' Incentive Awards...............................20

LEGAL STANDARD......................................................................................21

916575.5

**TABLE OF CONTENTS**
**(continued)**

                                                                                                  **Page**

ARGUMENT ...................................................................................24

   I.    The Proposed Settlement Warrants Preliminarily Approval .............24

        A.    Arm's Length Negotiations....................................................25

        B.    Sufficient Discovery Has Been Completed ...........................26

        C.    Settlement Proponents are Experienced in Similar Litigation ............................................................................26

   II.    The Requested Attorneys' Fees And Expenses Are Fair And Reasonable..........................................................................27

   III.    The Proposed Settlement Notice Is Constitutionally Sound .............28

   IV.    Scheduling A Final Approval Hearing Is Appropriate......................29

CONCLUSION ..................................................................................30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Atlass v. Mercedes-Ben USA, LLCz*
  No. 07-2720 (D.N.J.) ......................................................................................4

*Gates v. Rohm and Haas Co.*
  248 F.R.D. 434 (E.D.Pa. 2008) ....................................................................24

*Girsh v. Jepson*
  521 F.2d 153 (3d Cir. 1975)....................................................................24, 25

*Hall v. AT & T Mobility LLC*
  2010 WL 4053547 (D.N.J. 2007)..................................................................25

*Hankins v. Mercedes-Benz USA, LLC*
  No. 07-07543 (C.D. Cal.)................................................................................5

*In re American Family Enterprises*
  256 B.R. 377 (D.N.J. 2000) ..........................................................................26

*In re Cendant Corp. Sec. Litig.*
  109 F. Supp. 2d 235 (D.N.J. 2000)..........................................................26, 28

*In re Cigna Corp. Sec. Litig.*
  2007 WL 2071898 (E.D.Pa. 2007).................................................................25

*In re Community Bank of N. Virginia*
  418 F.3d 277 (3d Cir. 2005)...........................................................................22

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.*
*Litig.*
  55 F.3d 768 (3d Cir. 1995)......................................................................passim

*In re Mercedes-Benz Tele Aid Contract Litig.*
  Civ. No. 07-2720, MDL No. 1914, 2010 WL 2976496 (D.N.J. July
  22, 2010); 267 F.R.D. 113 (D.N.J. March 15, 2010); 257 F.R.D. 46
  (D.N.J. 2009) ...................................................................................................4

*In re Prudential Insurance Co. of America Sales Practices Litig.*
  962 F.Supp. 450 (D.N.J. 1997) .....................................................................26

*In re School Asbestos Litigation*

- iii -

# TABLE OF AUTHORITIES
## (continued)

Page

921 F.2d 1330 (3d Cir. 1986)........................................................................21

*In re Warfarin Sodium Antitrust Litig.*
391 F.3d 516 (3d Cir. 2004)........................................................................21

*Levin v. Mercedes-Benz USA, LLC*
No. 08-0175 (N.D. Ill.) ...............................................................................5

*Lonzisero v. Mercedes-Benz, U.S.A., LLC*
Civ. No. 09-0899 (D.N.J.).............................................................................6

*Marcus v. Mercedes-Benz USA, LLC*
No. 07-6892 (N.D. Ill.) ...............................................................................5

*McCoy v. Health Net, Inc.*
569 F. Supp. 2d 448 (D.N.J. 2008).............................................................22

*Morris v. ADT Sec. Servs.*
No. 07-cv-809 (S.D. Fla. Sept. 11, 2009) ......................................................3

*Morris v. Mercedes-Benz USA*
No. L-259207 (N.J. Sup. Ct.) ...................................................................3, 8

*Mullane v. Cent. Hanover Bank & Trust Co.*
339 U.S. 306 (1950)....................................................................................28

*Russell v. Mercedes-Benz USA, LLC*
No. 07-4984 (E.D.N.Y.)................................................................................5

*Sen. v. Mercedes-Benz USA, LLC*
No. 07-6519 (N.D. Ill.) ...............................................................................5

*Smith v. Prof'l Billing & Mgt. Serv., Inc.*
2007 WL 4191749 (D.N.J. Nov. 21, 2007) ................................................23

*Stowers v. Mercedes-Benz USA, LLC*
No. 08-1215 (W.D. Wash.) ..........................................................................5

*Tuteur v. Mercedes-Benz USA, LLC*
No. 08-223 (E.D. Mo.)..................................................................................5

*Zimmerman v. Zwicker & Associates, P.C.*
2011 WL 65912 (D.N.J. 2011)....................................................................23

## TABLE OF AUTHORITIES
### (continued)

Page

**STATUTES**

28 U.S.C. § 1292(b) ................................................................................7

28 U.S.C. § 1407 ....................................................................................4

Fed.R.Civ.P. Rule 23 ...........................................................................29

Fed.R.Civ.P. Rule 23(e) .................................................................19, 22

Fed.R.Civ.P. Rule 23(f) ........................................................................6

Fed.R.Civ.P. Rule 23(g)(3) ...................................................................5

Fed.R.Civ.P. Rule 26 ............................................................................9

**OTHER AUTHORITIES**

4 Newberg on Class Actions § 11.26 (4th ed. 2010) ...........................22

*Manual for Complex Litigation*, Third,  § 21.312 (West 1995) ...........28

*Manual for Complex Litigation,* Third, § 30.42 (West 1995) ..............23

## PRELIMINARY STATEMENT

Plaintiffs respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs and Defendant Mercedes-Benz USA, LLC ("MBUSA"), that resolves all claims in this matter. For the reasons set forth in this memorandum and the supporting documents, preliminary approval of the Settlement is appropriate.

As this Court is aware, Plaintiffs allege that MBUSA violated the New Jersey Consumer Fraud Act and unjustly enriched itself by failing to adequately inform some 105,000 to 120,000 owners and lessees of model year 2002-2006 Mercedes-Benz vehicles equipped with an analog-based Tele Aid system ("Qualifying Vehicles") of the impending obsolescence in February 2008 of analog service (by FCC mandate).  MBUSA charged consumers $600-650, plus labor costs that averaged $100, to upgrade Tele Aid systems to enable them to operate using digital signals.  As the Court is also aware, MBUSA disagrees with Plaintiffs' allegations and maintains that it did not know when the FCC would allow wireless companies to discontinue analog service until 2007, and that it made appropriate disclosures that reflected the potential unavailability of analog cellular service.

After years of difficult and tenaciously fought litigation, and with the assistance of Hon. Michael A. Shipp and Professor Eric Green as mediators, the

parties have reached a proposed Settlement that represents an overwhelmingly positive outcome for all Class members. The proposed Settlement provides recovery to Class members matched to the harm they suffered as a result of MBUSA's alleged failure to advise them of the pending obsolescence of the Tele-Aid System. The proposed Settlement further provides that MBUSA will pay Class counsel's fees and expenses, subject to the Court's approval, separately from the relief provided to Class members.

As further detailed below, the Settlement provides Class members relief based upon the category into which they fall:

(1) Class members who paid out-of-pocket for a digital Tele-Aid upgrade will automatically receive, without the necessity of filing a claim, a $650 check and a New Vehicle Certificate that can be used as a $1,300 credit toward the purchase or lease of a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer; these Class members will have the option of cashing the $650 check or, in the alternative, using the New Vehicle Certificate;

(2) Class members who still own or lease their Mercedes-Benz vehicles but did not purchase the digital upgrade are entitled to obtain a free upgrade to digital Tele Aid (but must pay for the dealer labor), or a $750 credit toward the purchase or lease of a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer;

(3) Class members who no longer own their Mercedes-Benz vehicle and did not purchase the digital upgrade will be entitled to a $750 credit toward the purchase or lease of a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer.

This relief is a tremendous accomplishment for the Class, particularly in light of the fact that two other cases arising from the same or similar core facts were lost without recovery. *See Morris v. Mercedes-Benz USA*, No. L-259207 (N.J. Sup. Ct.) (summary judgment granted on facts identical to those here); *Morris v. ADT Sec. Servs.*, No. 07-cv-809 (S.D. Fla. Sept. 11, 2009) (class certification denied and case dismissed on similar claims regarding the end of the analog signal against the home alarm company ADT).

For these reasons, and those detailed below, Plaintiffs respectfully request that the Court enter an order (1) granting preliminary approval of the proposed Settlement; (2) approving the proposed form and method of providing notice of the Settlement and directing that Notice be provided to the Settlement Class; (3) appointing Kurtzman Carson Consultants ("KCC") to serve as the Independent Claims Administrator; and (4) scheduling a fairness hearing to consider final approval of the Settlement and Class counsel's application for an award of attorneys' fees and expenses.

## STATEMENT OF FACTS

### I.       Factual Background

The Court is familiar with the facts giving rise to Plaintiffs' claims, and

MBUSA's defenses thereto.  Plaintiffs reference such facts below only to the

extent pertinent to the issues raised in this unopposed motion, and otherwise

assume familiarity with the facts as set forth in this Court's decisions.  *See In re*

*Mercedes-Benz Tele Aid Contract Litig.*, Civ. No. 07-2720, MDL No. 1914, 2010

WL 2976496 (D.N.J. July 22, 2010) (DE 165) (denying motion for reconsideration

of denial of decertification); 267 F.R.D. 113 (D.N.J. March 15, 2010) (DE 151)

(denial of motion for decertification); 257 F.R.D. 46 (D.N.J. 2009) (DE 105)

(granting class certification).

### II.      Litigation History

#### A.       Initial Filings and Consolidation

Plaintiffs filed a series of independent actions throughout the United States

alleging violations of applicable consumer protection laws, breach of warranty, and

unjust enrichment.  In the first-filed case, *Atlass v. Mercedes-Benz USA, LLC*, No.

07-2720 (D.N.J.), MBUSA filed a motion to dismiss, which this Court denied on

September 25, 2007.  (DE 21, 22).

Subsequently, *Atlass* and two other actions were presented to the Judicial

Panel for Multi-District Litigation ("JPML") for consolidation and transfer

pursuant to 28 U.S.C. § 1407.  *See Atlass v. Mercedes-Benz USA, LLC*, No. 07-

- 4 -

2720 (D.N.J.); *Pellegrini v. Mercedes-Benz USA, LLC,* No. 07-4530 (C.D. Cal.); *Stowers v. Mercedes-Benz USA, LLC*, No. 08-1215 (W.D. Wash.).  On February 26, 2008, the JPML issued an Order transferring these actions to this Court for coordinated pre-trial proceedings.  *See In re Mercedes-Benz Tele Aid Contract Litigation,* No. 07-2720, MDL No. 1914.  On March 4, 2008, the JPML transferred an additional five "tag-along" actions for coordinated  pretrial proceedings.[1]   In a final Order dated March 24, 2008, the JPML transferred an additional "tag-along" action.[2]  The action last transferred to this multidistrict litigation was the tenth, filed directly with this Court on February 27, 2009.[3]

In an April 11, 2008 Case Management Order, this Court appointed Lieff Cabraser Heimann & Bernstein, LLP, Girard, Gibbs LLP, and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC to serve as Interim Co-Lead Class counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiffs and the putative Class. (DE 34)  The Court also appointed Trujillo, Rodriguez & Richards, LLC to serve as Interim Plaintiffs' Liaison Counsel. *Id.*  In accordance with that Order,  Plaintiffs filed a Consolidated Class Action

---

[1]     *See Hankins v. Mercedes-Benz USA, LLC*, No. 07-07543 (C.D. Cal.); *Levin v. Mercedes-Benz USA, LLC*, No. 08-0175 (N.D. Ill.); *Sen. v. Mercedes-Benz USA, LLC,* No. 07-6519 (N.D. Ill.); *Marcus v. Mercedes-Benz USA, LLC*, No. 07-6892 (N.D. Ill.); and *Russell v. Mercedes-Benz USA, LLC*, No. 07-4984 (E.D.N.Y.).

[2]     *See Tuteur v. Mercedes-Benz USA, LLC*, No. 08-223 (E.D. Mo.).

[3]     *See Lonzisero v. Mercedes-Benz, U.S.A., LLC*, Civ. No. 09-0899 (D.N.J.).

Complaint on May 2, 2008.  (DE 38).

B.    **Class Certification and Subsequent Motion Practice**

After extensive document and deposition discovery, detailed below, Plaintiffs moved on October 6, 2008 for certification of a nationwide class.  In an Opinion and Order dated April 27, 2009, the Court found that New Jersey law applied to a nationwide class of Tele-Aid subscribers and certified the following class asserting claims under the New Jersey Consumer Fraud Act and unjust enrichment:

> All persons or entities in the United States who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and
>
> > (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or
> >
> > (2) purchased an upgrade to digital equipment.

(DE 105, 106).

On May 11, 2009, pursuant to Fed.R.Civ.P. Rule 23(f), MBUSA filed a petition for leave to appeal the Class Certification Order. The United States Court of Appeals for the Third Circuit denied that petition on June 11, 2009.  (DE 111).

After the Third Circuit denied review of the class certification decision, MBUSA filed a motion to decertify the Class.  Following extensive briefing and argument, this Court denied that motion in a decision filed on March 15, 2010.

(DE 151, 152).  The Court concluded, however, that modification of the Class

definition was appropriate, reciting the modified class definition as follows:

> All persons or entities in the United States who
> purchased or leased a Mercedes-Benz vehicle equipped
> with an analog-only Tele Aid system after August 22,
> 2002, except those who purchased or leased a pre-owned
> Mercedes-Benz vehicle in December 2006 or thereafter,
> and
>
> (1) subscribed to Tele Aid service until being informed
> that such service would be discontinued at the end of
> 2007, or
>
> (2) purchased an upgrade to digital equipment.

The Court also granted certification for interlocutory appeal of two narrow

issues pursuant to 28 U.S.C. § 1292(b).  On April 13, 2010, the Third Circuit

denied MBUSA's petition for leave to appeal pursuant to the Court's section

1292(b) certification.  (DE 156).

On March 29, 2010, MBUSA moved this Court for reconsideration of the

denial of decertification.  In another thorough opinion addressing class certification

issues, filed on July 22, 2010, this Court denied MBUSA's motion for

reconsideration of the denial of decertification.  The Class definition was again

modified, however (with Plaintiffs' consent), as follows:

> All persons or entities in the United States who
> purchased or leased a Mercedes-Benz vehicle equipped
> with an analog-only Tele Aid system after August 22,
> 2002, and

> (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or
>
> (2) purchased an upgrade to digital equipment,
>
> except those who:
>
> (1) purchased or leased a pre-owned Mercedes-Benz vehicle in December 2006 or thereafter, or
>
> (2) leased a Mercedes-Benz vehicle for a term that expired prior to the discontinuation of Tele Aid service.

(DE 165, 166).

### C.   Research and Discovery

From the pre-filing stage through exhaustive litigation and up until Settlement, Plaintiffs have conducted extensive investigation, research, documentary discovery, and work with experts in support of their claims.

### 1.   Early Discovery Efforts

Preceding coordination and consolidation, Class counsel devoted significant resources to client interviews and research pertaining to the applicability and effect of FCC regulations. Additionally, counsel coordinated their early discovery with the discovery served by plaintiffs in the state-court *Morris* case. In particular, counsel worked with MBUSA's counsel and *Morris* counsel to develop a protocol for the production of electronically stored information and a deposition schedule. MBUSA produced approximately 62,000 documents, which Class counsel coded and reviewed.

2.    **Written Discovery**

The parties commenced formal discovery in the MDL with the execution of
early disclosure requirements pursuant to Fed.R.Civ.P. Rule 26.  In May 2008,
MBUSA propounded 24 interrogatories and 34 requests for production on each of
the 14 named Plaintiffs.  In July 2008, each Plaintiff responded separately to the
requests for production, and eventually produced over 7,300 pages of documents
(averaging about 520 pages of documents per Plaintiff).  Plaintiffs also separately
responded to 336 interrogatories, many of which had discrete subparts.  In
responding to the initial interrogatories, Plaintiffs provided detailed information
regarding the purchase of their vehicles and their experiences with Tele Aid.  Each
Plaintiff reviewed and verified his or her responses.

Prior to the July 8, 2008, submission of a Joint Discovery Plan (DE 45-1),
Plaintiffs served a request for production of documents and deposition notices
upon MBUSA pursuant to Fed.R.Civ.P. 30(b)(6) and subpoenaed documents from
the Tele-Aid service provider, ATX Group, Inc. ("ATX Group").  *Id*.  In late 2009,
Plaintiffs served subpoenas *duces tecum* and *ad testificandum* upon Motorola, Inc.,
Cellco Partnership (d/b/a Verizon Wireless), Verizon Communications Inc.,
Lichtenstein + Associates, and Temic Automotive Services of North America, Inc.
Tens of thousands of documents were produced pursuant to those third party
subpoenas.

In November 2009, Plaintiffs propounded over 100 requests for admissions asking that MBUSA authenticate the documents it produced in response to Plaintiffs' discovery requests. Plaintiffs also propounded interrogatories seeking available subscriber and ownership data for all Class members, which was necessary for damages calculations. It would take months of conferring, exchanging position letters, negotiating about data depositions (one of which was taken), and otherwise working to identify and obtain data regarding Class members before Plaintiffs received the data they needed to calculate Class members' damages. Plaintiffs ultimately obtained all of the data needed, which led to an additional expert report and the final Class-wide damages figures with which Plaintiffs were prepared to proceed to trial.

In August 2009, MBUSA sought responses to contention interrogatories. The parties engaged in a vigorous meet and confer about the scope and timing of MBUSA's contention discovery. Plaintiffs ultimately provided 30 pages of responses identifying facts supporting Plaintiffs' case and identifying pertinent documents. MBUSA thereafter demanded further supplementation and revisions. Following additional written and verbal meeting and conferring, in October 2009, Plaintiffs amended their responses, this time providing specific document citations to each factual contention, as well as a list of all "communications-related technology" Plaintiffs had owned over a ten-year period. The parties continued to

meet and confer, reaching an impasse with respect to six interrogatory responses. The Court ordered that Plaintiffs further respond as to two of these interrogatories.

In December 2009, MBUSA propounded 248 requests for admissions, which required Class counsel to verify the existence of 79 articles and public filings relating generally to the analog to digital transition. Class counsel engaged in the time-consuming task of locating and reviewing the articles and provided responses in early 2010.

### 3. Depositions

Class counsel deposed ten MBUSA employees as well as three employees of ATX Group. Former FCC Commissioner Kathleen Quinn Abernathy testified as an expert witness on behalf of MBUSA. In addition, MBUSA disclosed and Plaintiffs deposed two additional expert witnesses. MBUSA deposed 13 Class representatives, one non-MDL Plaintiff, and each of Plaintiffs' three experts.

### 4. Expert Reports

Plaintiffs retained and relied upon the reports of three experts -- Dr. Warren J. Keegan, Mr. Edmond J. Thomas, and Dr. Russell L. Lamb. Class counsel assisted with the preparation of the reports authored by Plaintiffs' experts, prepared the witnesses for deposition, and defended the witnesses at their depositions. In addition, Dr. Lamb provided a subsequent report that contained detailed damage calculations. Class counsel assisted with the preparation of that report. MBUSA

also produced three experts, each of whom prepared and served a lengthy opinion on topics similar to those that Plaintiffs' experts addressed.  Class counsel carefully examined each opinion and deposed each of MBUSA's experts.

### 5. Class Mailing List

After the Court granted Plaintiffs' motion for class certification and the Third Circuit denied MBUSA's petition for appellate review, Class counsel devoted significant attention to discovery regarding Class notice, particularly the effort to gain access to mailing lists of Tele Aid subscribers.  Plaintiffs ultimately mailed class notice to 117,625 Class members, but only after the Court's orders regarding the Class definition and extensive efforts to obtain complete data on Class members.

### D. Class Notice

Class counsel negotiated the content of Class Notice with MBUSA, which required additional briefing before the Court.  Counsel also worked with a class notice administrator to process and update mailing data, design a Class member website, and mail notice.

The Class Notice distributed to prospective Class members conformed to the Notice as approved by Order of this Court on July 22, 2010.  In accordance with that Order, the Class Notice contained a description of Plaintiffs' claims and a definition of the Class, identified Class representatives, explained the procedural

steps necessary to remain in the Class or opt-out, directed Class member inquiries to the attention of an independent claims administrator, the Garden City Group, and finally, presented an opt-out request form for putative Class members who declined to remain in the Class.  Class Notice was disseminated to prospective Class members within 45 days from the date of the July 22, 2010 Order.  Service upon prospective Class members at current mailing addresses was executed via the United States Postal Service.

      E.    **<u>Mediation</u>**

After the Court's denial of MBUSA's motion for reconsideration relating to decertification, the parties agreed to submit this matter to mediation.  Initially, the parties retained Professor Eric Green of Resolutions, LLC.  The parties engaged in arms-length and in-person negotiations before Prof. Green on October 25, 2010, and November 18, 2010.  At the conclusion of the November 18, 2010 mediation, the parties reached an agreement in principle concerning the material terms of a settlement for the Class, leaving the issues of attorneys' fees and expenses and incentive awards for the named Plaintiffs to be negotiated.  The parties proceeded to Court-ordered mediation before the Honorable Michael A. Shipp, U.S.M.J., on those issues, and ultimately reached agreement as to both attorneys' fees and expenses and incentive awards.

III.   **The Proposed Settlement**

Any settlement requires the parties to balance the merits of the claims and defenses asserted and to consider the attendant risks of continued litigation and delay.  Plaintiffs maintain that the claims asserted are meritorious, that maintenance of class certification would prove successful, and that Plaintiffs would prevail if this matter proceeded to trial.  MBUSA maintains that Plaintiffs' claims are unfounded and cannot be maintained as a class action, denies any potential liability, and has shown a willingness to litigate those claims vigorously.

The parties have concluded that the benefits of settlement in this case outweigh the risks attendant to litigation, which include, but are not limited to, the time and expenses associated with proceeding to trial, the time and expenses associated with appellate review, and the countless uncertainties of litigation.

The material terms of the Settlement, as outlined in the Settlement Agreement attached hereto as Exhibit A, are summarized as follows:

A.   **Settlement Class**

The Settlement Class, certified as an opt-out class pursuant to Federal Rule of Civil Procedure 23(b)(3), is defined as follows:

> All persons or entities in the United States who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 22, 2002, and (1) subscribed to Tele Aid service until being informed that the service would be discontinued at the

end of 2007, or (2) purchased an upgrade to digital equipment;

The Class does not include persons or entities who (1) purchased or leased a pre-owned Mercedes-Benz vehicle in December 2006 or thereafter, (2) leased a Mercedes-Benz vehicle equipped with analog-only Tele Aid equipment, but returned the vehicle to the lessor before losing Tele Aid service; and

Also excluded from the Class are: all claims for personal injury, wrongful death, emotional distress, subrogation, or property damage; MBUSA and any affiliate, parent, or subsidiary of MBUSA; any entity in which MBUSA has a controlling interest; any officer, director, or employee of MBUSA; any successor or assign of MBUSA; any Judge to whom this case is assigned as well as his or her immediate family members and the Judge's judicial staff; and all persons who submitted a timely request to opt out of the Class certified by the Court on April 24, 2009, as modified on March 15, 2010 and July 22, 2010; and all persons who submit a timely request to opt out of the Settlement Class.

*See* Agreement ¶ 42.

**B.    Relief To The Class**

As described in paragraphs 50-66 of the Agreement, relief to the Class shall be available in three categories.

**1.    Group 1**

Group 1 Class members, those who purchased a digital Tele-Aid upgrade will receive a "Dual Use Certificate" valid at the election of the Class member either as a check in the amount of $650, or, in the alternative, a New Vehicle Certificate which can be used as payment of $1,300 toward the purchase or lease of

a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer. Plaintiffs' expert Dr. Lamb has identified Group 1 as consisting of approximately 6,802 Class members, each of whom will receive a Dual Use Certificate without the need to file a claim form or take any other affirmative step. A Class member who is not initially identified in Group 1 will be entitled to a Dual Use Certificate upon satisfactory proof of the purchase of an Upgrade. The check portion of each Dual Use Certificate will expire 90 days from the date of issuance, and the New Vehicle Certificate portion of each Dual Use Certificate will expire one year from the effective date of the Certificate.

### 2.      Group 2

Class members in Group 2 are those who still own their Mercedes-Benz vehicle but did not purchase a digital Tele-Aid upgrade. Group 2 Class members who properly submit a Claim Form within 90 days after the entry of a Preliminary Approval Order shall receive one of two alternative remedies for each Qualifying Vehicle: (1) a certificate that entitles the Class member to obtain a digital Upgrade unit ("Upgrade Certificate"); or (2) a "New Vehicle Certificate" in the amount of seven hundred fifty dollars ($750.00), which may be used toward the purchase or lease of a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer.

Group 2 Class members who elect to receive an Upgrade Certificate are entitled to a free digital Upgrade unit (a $650.00 cost) and a "flash" of the digital

Upgrade unit (a $35.00 cost).  A dealer's labor charge for installation of the digital

Upgrade unit is not covered by the Upgrade Certificate and must be paid by the

Class member.  MBUSA will republish to its dealers a chart that states the

recommended labor time to install the upgrade unit.  Approximately 28,500 digital

Upgrade units are available. In the event of exhaustion of the 28,500 available

Upgrade units, Group 2 Class members will receive a New Vehicle Certificate.

New Vehicle Certificates expire 12 months from the Effective Date of each

certificate.  New Vehicle Certificates may be applied in addition to other available

promotions or discounts and are subject to a single transfer to a Class member's

parent, child or spouse.  Only one New Vehicle Certificate may be used toward the

purchase of a single vehicle.

**3.** **Group 3**

Group 3 Class members are those who did not purchase a digital Tele-Aid

upgrade and no longer own their Mercedes-Benz vehicle.  Group 3 Class members

who properly submit a Claim Form within 90 days after the entry of a Preliminary

Approval Order will receive a New Vehicle Certificate, subject to the same terms

and conditions identified above

**C.** **Release To MBUSA**

In exchange for the consideration afforded by MBUSA, and upon

compliance with the terms of the Settlement Agreement, Class members who have

not previously excluded themselves from the Class or who do not opt out of the Settlement in response to the Settlement Notice will provide a release of their claims in this case.  Specifically, they will release MBUSA and related "Released Persons" from any and all liabilities, claims, causes of action, damages, expenses, attorneys' fees, losses, or demands "relating to the sale or lease of any Mercedes-Benz vehicle equipped with an analog-based Tele Aid system" after August 22, 2002 and until the date of Final Approval.  Agreement ¶ 87.  The release does not apply to claims for "personal injury, wrongful death, emotional distress, subrogation, or property damage."  *Id.*

### D.   Settlement Notice

As provided in the Agreement, all expenses of Settlement Notice will be paid by MBUSA.  Within 10 days after the entry of the Preliminary Approval Order, KCC shall mail Settlement Notice to Class members, in the form approved by the Court, at their last known addresses as provided by MBUSA and ATX Group and as updated by KCC.  Agreement ¶¶ 75-76; Declaration of Daniel Rosenthal & Exhibit 1 to Rosenthal Dec.

The Settlement Notice includes an explanation of the procedure by which Class members may opt out of the Settlement Agreement.  A Class member may opt out of the Settlement Agreement at any time within sixty (60) days following the mailing of Settlement Notice ("Opt-Out Period").  Any Class member who

submits a request to opt out of the Class must also provide the Vehicle

Identification Number ("VIN") of their Qualifying Vehicle.  Agreement ¶ 78.

In accordance with Fed.R.Civ.P. Rule 23(e), Class members will be afforded

an opportunity to object to the fairness, adequacy and reasonableness of any

portion of the Settlement Agreement.  The Settlement Notice explains of the

procedure and requirements for Class members to object to the Settlement

Agreement and/or to the attorneys' fees  and expenses sought by or awarded to

Class counsel.  The Settlement Notice also directs Class members to Class

counsel's website(s), where they can view or download documents, including

Class counsel's attorneys' fee petition.  Agreement ¶ 80; Rosenthal Dec ¶ 7 & Ex.

1.

The parties shall agree on language announcing the Settlement Agreement

and language to use in responding to any inquiries from the press or third parties.

Agreement ¶ 82.

### E.   Attorneys' Fees and Expenses

Subject to Court approval,   MBUSA will pay Class counsel attorneys' fees

and expenses of $6,250,000.  The parties negotiated and reached agreement

regarding attorneys' fees only after reaching agreement on all other material terms

of the Settlement.  The payment of attorneys' fees and expenses is separate from

and in addition to the other relief afforded to Class members under the Settlement -

- no Class member's recovery is reduced to pay for fees and expenses.  In the event the Court approves the Settlement but declines to award Class counsel's attorneys' fees and expenses in the amount requested by Class counsel, the Settlement shall nevertheless be effective and binding on the Parties.  Class counsel assume responsibility for the allocation and disbursement of attorneys' fees and expenses among all MDL Plaintiffs' Counsel.

Within three banking days after the Court's entry of the Preliminary Approval Order, MBUSA will deposit attorneys' fees  and expenses, as approved by the Court, into an interest-bearing joint account at Citibank, N.A. ("Joint Account"), to be administered jointly by the Parties and to be disbursed by Class counsel in accordance with the terms of the Settlement.  In the event that the Settlement does not receive Final Approval by the Court, the funds in the Joint Account, including any interest accrued thereon, shall be disbursed to MBUSA. Similarly, in the event that Final Approval of the Settlement is reversed or modified on Appeal, Class counsel will remit monies to MBUSA counsel in accordance with the terms of the Settlement Agreement and the Stipulated Undertaking attached as Exhibit 4 to the Agreement.  Agreement ¶¶ 93-95.

F.       **Class Representatives' Incentive Awards**

The parties have agreed that Plaintiffs will petition the Court for Class Representative Incentive Awards of Five Thousand Dollars ($5,000.00) per

individual, to be paid by MBUSA in addition to the relief to which those

Representatives are entitled to as Class members and on top of the relief to the

Class.  Agreement ¶¶ 97-98.

These awards will compensate the representative Plaintiffs for the

considerable time and effort they expended in prosecuting this case against

MBUSA.  In addition to the discovery-related efforts outlined above, each Class

Representative was kept informed of the litigation as it developed, and all were

kept abreast of, and signed off on, the proposed Settlement.  Further, they

committed to participating in the litigation in whatever capacity needed should

settlement not have occurred.  MBUSA does not oppose the request for Incentive

Awards.

## LEGAL STANDARD

"There is an overriding public interest in settling class action litigation, and

it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig*., 391

F.3d 516, 535 (3d Cir. 2004); *see also In re General Motors Corp. Pick-Up Truck*

*Fuel Tank Prods. Liab. Litig.* ("*GM Trucks*")*,* 55 F.3d 768, 785 (3d Cir. 1995)

("[T]he law favors settlement, particularly in class actions and other complex cases

where substantial judicial resources can be conserved by avoiding formal

litigation."); *In re School Asbestos Litigation*, 921 F.2d 1330, 1333 (3d Cir. 1986)

(noting Third Circuit's policy of "encouraging settlement of complex litigation that

- 21 -

otherwise could linger for years"); *In re Community Bank of N. Virginia*, 418 F.3d
277, 299 (3d Cir. 2005) ("[A]ll Federal Circuits recognize the utility of . . .
'settlement classes' as a means to facilitate the settlement of complex nationwide
class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval
for the compromise of claims brought on a class basis. The first step a court takes
in approving a class settlement is to preliminarily evaluate the proposed settlement.
*GM Trucks*, 55 F.3d at 785.  The purpose of preliminary evaluation of proposed
class action settlements is to determine whether the settlement is within the "range
of reasonableness," and thus whether notice to the class of the settlement's terms
and the scheduling of a formal fairness hearing is worthwhile. 4 Newberg on Class
Actions § 11.26 (4th ed. 2010).

Preliminary approval is appropriate and there is an initial presumption of
fairness in this Circuit when the court finds that "(1) the negotiations occurred at
arm's length; (2) there was sufficient discovery; (3) the proponents of the
settlement are experienced in similar litigation; and (4) only a small fraction of the
class objected."[4] *Id.*; *see also Manual for Complex Litigation,* Third, § 30.42

---

[4]     Courts have considered the last factor, regarding the portion of the Class that
has objected at the time of final approval, after notice of the settlement reaches the
class.  *See*, *e.g.*, *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 458-59 (D.N.J.
2008).  Because Settlement Notice has not been approved and disseminated yet in

(1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted); *Smith v. Prof'l Billing & Mgt. Serv., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

Once preliminary approval is granted and after notice of the settlement reaches the class, enabling class members to opt out of or object to the settlement if they wish, a court must hold a hearing to make a final decision as to whether the settlement is "fair, reasonable, and adequate" as required by Rule 23(e). *GM Trucks,* 55 F.3d at 785.  "Although the Court's role in evaluating the fairness, reasonableness and adequacy of the parties' proposed settlement is circumscribed, especially at the preliminary approval stage," if the "proposed settlement appears obviously deficient, the ruling should be issued before rather than after the parties incur the administrative expense to publish notice to the class and handle any objections."  *Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912, at *3 n.5 (D.N.J. 2011).

---

this case, Plaintiffs do not address that factor in the discussion below, but will do so on final approval.

For the purposes of *final* settlement approval, courts in this Circuit apply nine additional factors -- the "*Girsh*" factors -- to evaluate whether a settlement meets the requirements of Rule 23(e).  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[5]  Courts need not examine these factors at the preliminary approval stage, however.  *See*, *e.g.*, *Gates v. Rohm and Haas Co*., 248 F.R.D. 434, 444 n.7 (E.D.Pa. 2008) (listing but not analyzing the *Girsh* factors in granting preliminary approval).  Though Plaintiffs submit that the *Girsh* factors weigh strongly in favor of a conclusion that this Settlement is fair, reasonable, and adequate, as evidenced by the facts of this case and the litigation history outlined above, Plaintiffs reserve their thorough discussion of those points until submission of the motion for final approval of the Settlement.

## ARGUMENT

## I.    The Proposed Settlement Warrants Preliminarily Approval

Preliminary approval is appropriate here because (1) the settlement negotiations occurred at arm's length; (2) there has been sufficient discovery; and (3) counsel, and particularly Class counsel, are experienced in similar litigation.

---

[5]      The *Girsh* factors are (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Girsh v. Jepson*, 521 F.2d at 157.

*GM Trucks,* 55 F.3d at 785.

### A.     Arm's Length Negotiations

The proposed Settlement is a result of arm's-length negotiations in formal mediation under the auspices of two independent mediators between Class counsel and MBUSA and its counsel.  "[T]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. 2007) (internal quotation marks omitted); *see also In re Cigna Corp. Sec. Litig.,* 2007 WL 2071898 at * 3 (E.D.Pa. 2007) ("Concerning the presumption of fairness, it is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as a mediator.").

In this case, the material terms of the proposed Settlement are the product of two separate in-person mediation sessions, conducted with a neutral mediator, Professor Green, that were dedicated exclusively to the terms of Class Settlement prior to any discussion of attorneys' fees or incentive awards. The attorneys' fee and incentive award issues were also resolved formally, with the assistance of Judge Shipp.  As both Judge Shipp and Professor Green can attest, these negotiations were arm's-length – indeed, hotly disputed – at every step.

B.   **Sufficient Discovery Has Been Completed**

Generally, settlement should arise after the plaintiffs have gathered

sufficient information and taken sufficient discovery in order to have an adequate

appreciation of the merits of the case before negotiating.  *GM Trucks*, 55 F.3d at

813.

As outlined above, the Settlement in this case was reached after discovery

was essentially complete.  Plaintiffs and Class counsel therefore had a thorough

appreciation of the merits of the claims asserted and – after weighing the cost,

length of time, and risks necessary to litigate the matter to a conclusion – have

determined that the proposed Settlement is the best result for the Class.

C.   **Settlement Proponents are Experienced in Similar Litigation**

Recommendations of experienced counsel are entitled to great weight in

evaluating a proposed settlement in a class action.  *In re Prudential Insurance Co.*

*of America Sales Practices Litig.*, 962 F.Supp. 450, 543 (D.N.J. 1997).

"[S]ignificant weight should [ ] be given 'to the belief of experienced counsel that

settlement is in the best interest of the class,' so long as the Court is satisfied that

the settlement is the product of "good faith, arms-length negotiations." *In re*

*American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000); *In re Cendant*

*Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000).

As recognized in this Court's Class Certification Opinion dated April 27,

2009, Class counsel who negotiated the Settlement Agreement are "sufficiently qualified and experienced to conduct the litigation[,] . . . have ably handled the proceedings thus far, and MBUSA has not objected to their qualifications."  (DE 105 at 51).  Moreover, as evidenced by the declarations submitted in support of Class Certification, Class counsel are well reputed for complex class action and multidistrict litigation with a focus on consumer protection.  (DE 60, 61).  The experience of qualified counsel involved in this matter warrants preliminary approval of the Settlement Agreement.

## II.    The Requested Attorneys' Fees And Expenses Are Fair And Reasonable

Subject to the Court's approval, MBUSA has agreed to pay $6,250,000 in fees and expenses to Class counsel in addition to the benefits to be provided to the Class.  As will be detailed in their Fee Application, this amount reflects Class counsel's actual time and expenses expended in the case, enhanced by a very modest multiplier.  As noted, the parties negotiated this amount entirely separately from negotiation of Class relief, only after the substantive terms of the Settlement were agreed upon, and the Settlement is binding even if the Court declines to award Class counsels' attorneys' fees and expenses in the amount requested by Class counsel.  Prior to the objection deadline, Class counsel will file a separate motion for attorneys' fees and expenses addressing the reasonableness of their fee request in light of the amount of work done, the results obtained, the quality of

representation, and the complexity and novelty of the issues presented.  That

motion and supporting papers will be available for Class members to review on

Class counsel's website(s).

**III.    The Proposed Settlement Notice Is Constitutionally Sound**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner

to all class members who would be bound by a proposed settlement, voluntary

dismissal, or compromise regardless of whether the class was certified under Rule

23(b)(1), (b)(2), or (b)(3)."  *Manual for Compl. Lit., supra*, at § 21.312 (internal

quotation marks omitted).  The best practicable notice is that which is "reasonably

calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "To

satisfy this standard, the notice must inform class members of (1) the nature of the

litigation; (2) the settlement's general terms; (3) where complete information can

be located; and (4) the time and place of the fairness hearing and that objectors

may be heard."  *In re Cendant*, 109 F. Supp. 2d at 254; *see also Manual for Compl.

Lit., supra*, at § 21.312 (listing relevant factors).

The proposed form of Settlement Notice, attached as Exhibit 3 to the

Agreement, satisfies all of these criteria.  As recited in the proposed Settlement,

Notice will inform Class members of the Settlement and will advise Class

members of their potential relief, their options for opting out or objecting to the

Settlement, and how to obtain additional information about the Settlement.

The Notice Plan provides for mailing to the last known addresses of Class

members based on the mailing list developed from MBUSA's business records.

KCC will assume the responsibility of updating Class member addresses and make

all reasonable efforts to ascertain the appropriate address for any Class member's

Settlement Notice that is returned by the United States Post Service as

undeliverable. Furthermore, copies of the fully executed Settlement Agreement,

Court orders, applicable court filings (including Class counsel's fee petition), the

Settlement Notice and an agreed statement regarding the Settlement Agreement

will be available on a specially-designated page of Class counsel's website(s).

Widespread publication of the Settlement Notice is unnecessary in this case,

because, as this Court has observed (DE 151 at 91), Tele Aid subscription records

contain all Class members' names and addresses such that notice by mail can

satisfy the requirements of due process and Federal Rule of Civil Procedure 23.

**IV.**      **Scheduling A Final Approval Hearing Is Appropriate**

The last step in the approval process is a final fairness hearing at which the

Court may hear all evidence and argument necessary to make its Settlement

evaluation. Proponents of the Settlement may explain the terms and conditions of

the Settlement, and offer argument in support of final approval. The Court will

determine after the final approval hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final approval at the Court's convenience.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1) granting preliminary approval of the Settlement; (2) approving the proposed form and method of providing notice of the pendency of this action and the Settlement and directing that Notice be provided to the Settlement Class; (3) appointing Kurtzman Carson Consultants to serve as the Independent Claims Administrator; and (4) scheduling a fairness hearing at which the Court can consider final Settlement approval and Class counsel's application for an award of attorneys' fees and expenses.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Co-Lead Counsel for Plaintiffs


BY:   /s/ James E. Cecchi
        JAMES E. CECCHI

DATED:  May 3, 2011

Jonathan D. Selbin
Jennifer Gross
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson St., 8th Floor
New York, NY  10013
(212) 355-9500

Eric H. Gibbs
Geoffrey A. Munroe
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA  94108
(415) 981-4800

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, NJ  07068
(973) 994-1700

Lisa J. Rodriguez
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
258 Kings Highway West
Haddonfield, NJ  08033
(856) 795-9002

*Co-Lead and Liaison Counsel for Plaintiff*