NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: MERCEDES-BENZ TELE AID CONTRACT LITIGATION | : | **O P I N I O N** |
|  | : | Civ. No. 07-2720(DRD) |
|  | : | MDL No. 1914 |

*Appearances by:*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
by: Jonathan D. Selbin, Esq. & Jennifer Gross, Esq.
780 Third Avenue, 48th Floor
New York, NY 10017

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
by: James E. Cecchi, Esq. & Lindsey H. Taylor, Esq.
5 Becker Farm Road
Roseland, NJ 07068

GIRARD GIBBS, LLP
by: Eric H. Gibbs, Esq. & Geoffrey A. Munroe, Esq.
601 California Street, 14th Floor
San Francisco, CA 94108

TRUJILLO, RODRIGUEZ & RICHARDS, LLP
by: Lisa J. Rodriguez, Esq.
8 Kings Highway West
Haddonfield, NJ 08033

   *Co-Lead and Liaison Counsel for Plaintiffs*

BRYAN CAVE, LLP
by: Peter W. Herzog III, Esq. & Ketrina G. Bakewell, Esq.
1 Metropolitan Square

211 N. Broadway, Suite 3600
St. Louis, MO 63102


GRAHAM CURTIN, PA
Thomas R. Curtin, Esq.
Kathleen M. Fennelly, Esq.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Court Judge**

The Court has held a Final Approval Hearing to determine if the proposed Settlement of this class action should be approved as fair, reasonable and adequate, to consider proposed stipends to each of twelve class representatives and to consider Class counsel's application for an award of attorneys' fees and expenses.

## I. Background

Plaintiffs filed a series of independent actions throughout the United States alleging that Defendant, Mercedes-Benz USA, LLC ("MBUSA") violated applicable consumer protection laws, breach of warranty and unjust enrichment. Certain of these actions were presented to the Judicial Panel for Multi-District Litigation ("JPML") for consolidation and transfer pursuant to 28 U.S.C. § 1407. On February 26, 2008, the JPML issued an order transferring these actions to this Court for coordinated pretrial proceedings. It subsequently transferred additional tag-along actions for consolidated pretrial proceedings.

The Court appointed Interim Co-Lead Class Counsel and Interim Plaintiffs' Liaison Counsel. Plaintiffs filed a Consolidated Class Action Complaint on May 2, 2008, asserting

claims against MBUSA for violation of the New Jersey Consumer Fraud Act, breach of implied warranty and unjust enrichment.[1]  The Consumer Fraud Act claim was in connection with analog-based Tele Aid equipment installed in certain Mercedes-Benz vehicles.  The Consolidated Complaint alleged that MBUSA violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq. by selling vehicles with Tele Aid equipment that required an analog cellular signal to function, when MBUSA was aware, but failed to disclose, that the analog cellular signal would be discontinued at the end of 2007.

MBUSA filed an answer to the complaint, Extensive class action and merits discovery ensued.  On April 27, 2009 the Court granted Plaintiffs' motion for certification of a nationwide Class of persons or entities who purchased or leased a Mercedes-Benz vehicle equipped with an analog-based Tele Aid system after August 8, 2002, who either (1) "subscribed to Tele Aid service until being informed that such series would be discontinued at the end of 2007", or (2) "purchased an upgrade to digital equipment."  The Court of Appeals denied MBUSA's Petition for Appeal of the Class certification order.

On August 31, 2009, MBUSA moved to decertify the Class and moved to clarify the Class definition.  On March 15, 2010, the Court denied the motion to decertify the Class, but modified the Class definition by (1) changing the beginning date of the Class period from August 8, 2002, to August 22, 2002, and (2) excluding "those who purchased or leased a pre-owned Mercedes-Benz vehicle in December 2006 or thereafter" to which stickers were affixed informing potential purchasers of changes to "the FCC Rule [the Federal Communications Commission Rule regarding the provision of analog wireless service] and the impending

---

[1] Plaintiffs withdrew the claim for breach of implied warranty on March 11, 2009.

obsolescence of analog Tele Aid." The Court of Appeals denied MBUSA's petition for leave to appeal the decision on MBUSA's motion to decertify the Class. This Court denied MBUSA's motion for reconsideration.

Thereafter, settlement discussions began. They were conducted in party-to-party negotiations and in mediation sessions with Professor Eric Green of Resolutions, LLC. At the conclusion of the November 18, 2010 mediation, agreement on all material terms of a Class settlement was reached. Thereafter the parties began discussion of attorneys' fees and expenses and incentive awards for the Class Representatives.

Further in-person discussion and mediation with Magistrate Judge Shipp took place with respect to fees and incentive awards, and on February 15, 2011 agreement was reached.

## II. The Settlement Agreement

The Settlement provides remedies for three different groups of Class Members.

Group 1 consists of Class Members who paid for an upgrade of the analog Tele Aid system in their vehicle so that it could operate on digital signals. Class Members in this group will automatically receive a Dual Use Certificate which may be used either as a $650 check or a $1,300 New Vehicle Certificate good toward the purchase or lease of a new Mercedes-Benz vehicle from an authorized Mercedes-Benz dealer. Group 1 Class Members are not required to submit a Claim Form.

Group 2 Class Members are those who did not pay for an upgrade and still own their Mercedes-Benz. They may file a claim to receive an Upgrade Certificate having a value of $650 or a $750 New Vehicle Certificate good toward the purchase or lease of a new Mercedes-Benz from an authorized Mercedes-Benz dealer.

The Upgrade Certificate entitles the holder to obtain a digital upgrade unit (a $650 cost) from an authorized dealer along with a "flash" of the upgrade unit (a $35 cost) at no cost to the holder. A dealer's labor charges for installation of the digital upgrade unit must be paid for by the Class Members. The Class Member will also be required to pay MBrace subscription fee to activate mBrace service. MBrace is the emergency response system that succeeded Tele Aid. If all the 28,500 available digital upgrade units have been distributed to other Claimants, the Class Member will receive a $750 New Vehicle Certificate.

Group 3 Class Members are those who no longer own or lease their Mercedes-Benz and did not purchase an upgrade. Upon submission of a claim form they will receive a $750 New Vehicle Certificate.

In exchange for the foregoing benefits Class Members who have not previously excluded themselves from the Class or who do not opt out of the Settlement in response to the Settlement Notice will provide a release of their claims in this case. They will release MBUSA and "Released Persons" (as defined in the Settlement Agreement) from any liabilities, claims, causes of action, damages, expenses, attorneys fees, losses or demands "relating to the sale or lease of any Mercedes-Benz vehicle equipped with an analog-based Tele Aid System" after August 22, 2002, until the date of the Final Approval of the Settlement Agreement.

As part of the Settlement MBUSA agrees to pay Class Counsel's attorneys' fees and expenses in the total amount of $6,250,000, subject to Court approval of Class Counsel's petition for attorneys' fees and expenses in an amount no greater than that. Court approval of the Settlement shall not be affected by its failure to award attorneys' fees and expenses in the amount requested.

The Settlement Agreement provides that Class Counsel shall petition the Court for a Class Representative Incentive Award of $5,000 per individual to be paid by MBUSA to LeRoy Browning, Jama Giotis, Richard Hankins, Jack D. Kelley, Karen Marcus, Christian Andress Pellegrinis, Mark Russell, Ashish Sen, Colleen Sen, Michael Leslie Shin, Lois A. Stowers and Susan Tuteur.  Failure of the Court to approve the Incentive Awards will not affect the binding effect of the balance of the Settlement Agreement.

The Settlement Agreement is governed by the law of New Jersey.

### III. Objections to the Settlement Agreement

On May 20, 2011 the Settlement Notice was mailed to 103,675 Class members.  Widespread publication of the Settlement Notice was unnecessary because Tele Aid subscription records contain all Class members' names and addresses such that notice by mail can satisfy the requirements of Fed. R. Civ. P. 23.  In addition a website was created where copies of the fully executed Settlement Agreement, court orders, court filings, the Settlement Notice and an agreed statement regarding the Settlement Agreement are available for download.  Notice of the Settlement was provided to appropriate state and federal government officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

As of July 5, 2011 12 Class members had opted out of the Settlement.  Only 17 Class members objected, less than 0.014% of the Class.  The objections fall into several categories.

No one in Group 1 objected.  There were ten objectors in Group 2.  Their principal contentions are that they should not be required to pay for the labor costs to convert the analog device to a digital system and that the alternative of a $750 New Vehicle Certificate is meaningless because the claimant has no wish to purchase a new Mercedes-Benz within the

designated time limit or at any time. This is essentially a contention that the amount of the award is inadequate.

There were several objections not tied to the particular Group to which the claimant belonged. They objected to the class action procedure and the settlement as a matter of principle. The agreement was characterized as "nothing more than a gentleman's agreement between lawyers to ensure that a frivolous lawsuit is settled while ensuring that their fees are covered." On the other hand, one claimant urged approval of the Settlement but would rather have had cash.

The Group 3 objectors urged that offering them a $750 New Vehicle Certificate was offering them nothing at all because they had no wish to buy a new Mercedes-Benz. At least one claimant had already sold his qualifying Mercedes-Benz and had already purchased a new one, thus rendering a New Vehicle Certificate useless.

## IV. **Evaluation of the Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The Court earlier reviewed the Settlement Agreement and found it to be within the range of reasonableness, permitting issuance of notice to the Class of the Settlement's terms and the scheduling of a formal fairness hearing. The purpose of the fairness hearing is to determine if the Settlement is "fair, reasonable, and adequate."

The law favors settlements, particularly in class actions and other complex cases. Judicial resources can be conserved and the parties can reduce their litigation expenses and the amount of the parties' time devoted to unproductive efforts. In re Warfarin Sodium Antitrust Litig., 391 F. 3d 516, 535 (3d Cir. 2004). However, the court must scrutinize the terms of any

settlement to ensure that it truly benefits the class members.  For the purposes of final settlement approval, courts in the Third Circuit apply nine factors - the so-called "Girsh" factors.  <u>Girsh v. Jepson</u>, 521 F. 2d 153, 157 (3d Cir. 1975).  Applying those factors the Court finds that the Settlement is fair, reasonable, and adequate.

  A. <u>Complexity and Duration of Litigation</u>: This case involved years of difficult and hard-fought litigation by able counsel on both sides.  In the first-filed case, <u>Atlass v. Mercedes-Benz USA, LLC</u>, No. 07-2720 (D.N.J.), MBUSA filed a motion to dismiss that was briefed and argued extensively.  The Court denied the motion on September 25, 2007.

  After extensive document and deposition discovery, proceedings with respect to certification of a class were conducted.  They are described above and entailed the original motion for class certification, a petition to appeal the original certification of a class (which was denied), a motion to decertify the class (which was denied), a petition to appeal the denial of that motion, and a motion to reconsider the denial of the motion.

  Plaintiffs' and MBUSA's discovery and investigative efforts were extensive.  Written discovery included comprehensive interrogatories, demands for production of documents and requests for admission.  Plaintiffs served subpoenas <u>duces tecum</u> and ad testificandum upon several third parties, resulting in the production of tens of thousands of documents.

  Class counsel deposed ten MBUSA employees as well as three employees of ATX Group.  Former FCC Commissioner Kathleen Quinn Abernathy testified as an expert witness on behalf of MBUSA.  In addition, MBUSA disclosed, and Plaintiffs deposed two additional expert witnesses.  MUSA deposed 13 Class representatives, one non-MDL Plaintiff, and each of Plaintiffs' three experts.  Plaintiffs retained and relied upon the reports of three experts.  The

supplemental report of one of the experts contained detailed damage calculations.

The individual cases leading to consolidation and transfer were filed in 2007. The JPML issued its original transfer Order for coordinated pre-trial proceedings on February 26, 2008. On May 2, 2008 Plaintiffs filed their Consolidated Class Action Complaint. Class Certification proceedings, and motion practice and discovery proceeded until mediation and negotiations of a settlement commenced in the fall of 2010. Thus the Settlement discussions were not initiated until substantial time and efforts had been expended exploring the factual basis and merits of Plaintiffs' claims. Were the action to continue considerable efforts would have to be expended to deal with in limine motions, a final pretrial conference and preparation for and conduct of a trial. These considerations weigh heavily in favor of the settlement.

B. <u>Reaction of the Class</u>: A "paucity of protestors . . . militates in favor of the settlement," <u>Bell Atlantic Corp. v. Bolger</u>, 2 F. 3d 1304, 1314 (3d Cir. 1993). Here as of July 5, 2011, only 12 Class members have opted out of the Settlement. It is estimated that there are 105,000 to 120,000 owners and lessees of Mercedes-Benz equipped with the Tele Aid device for model year 2002-2006. Notice was originally sent to 103,675 Class members on May 20, 2011. Only 17 objected as of July 5, 2011. Group 1 Class members are not required to file claims. As of July 5, 2011, the Group 2 and 3 Class members have filed 14,627 claims. These results indicate support of the Settlement from the Class.

C. <u>Stage of Proceedings</u>: As has been described above, class issues have been resolved; documentary discovery and depositions appear to have been virtually completed; experts have been retained and deposed. Pretrial proceedings are coming to an end. The parties entered negotiations with extensive knowledge of the underlying facts. Counsel possessed sufficient

9

information to assess the relative strengths and weaknesses of their case and reach a fair bargain. Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745 at *12, *13 (D.N.J. April 11, 2011).

      D.  Risks of Establishing Liability:  The risk of establishing liability should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." In re Cendant Corp. Litig., 264 F. 3d 201, 237 (3d Cir. 2001).  The risk of Class plaintiffs losing their case must be weighed in light of the fact that two other cases arising from the same or similar case facts were lost without recovery. Morris v. Mercedes-Benz USA, no. L-259207 (Law Div. Bergen Co.); Morris v. ADT Soc. Servs., No. 07-cv-809 (S.D. Fla. Sept. 11, 2009).

      MBUSA has defended this case zealously and has the resources needed to continue to do so.  The risks that it will prevail at trial or on appeal are considerable and weigh strongly in favor of settlement.

      E.  Risks of Establishing Damages:  A risk of establishing damages is evidenced by the fact that at the class certification stage MBUSA challenged Plaintiffs' expert's analysis of damages, submitting its own expert report and seeking to exclude the Plaintiffs' report, challenging its methodology.  The risk of establishing damages weighs in favor of the Settlement. In re Warfarin Sodium Antitrust-Litig., 39, F. 3d 516-537 (3d Cir. 2004).

      F.  Risks of Maintaining a Class Action:  The class action issues have already been the subject of several motions and an appeal.  There appears to be little danger that the class status of the action will change during the course of a trial, but it might be successfully challenged in an appeal.

      G.  Ability of MBUSA to Withstand Greater Judgment:  There is little doubt that

MBUSA could withstand a judgment in excess of the amount which it will be compelled to pay to implement the Settlement. This factor has few if any implications with respect to the fairness, adequacy and reasonableness of the settlement.

      H.  <u>Reasonableness in Light of Best Recovery and Risks of Litigation</u>: Here the Class members who paid for an upgrade of their vehicle will receive cash in the approximate amount they paid out of pocket, not including labor, i.e., $600-650 for the upgrade, plus $100-200 in labor. The check for $650 that they will receive is 76-93% of their actual damage. Alternatively, they can receive a certificate representing $1,300 they can use for the purchase of a new Mercedes-Benz.

Class members who still own their car and would like a digital upgrade will receive the equipment free as well as a free flash of the equipment (a $35 cost) but will remain responsible for the dealer's labor costs ($100-200). They have the option of receiving a $750 certificate toward the purchase of a new Mercedes-Benz vehicle, good off their best negotiated price, which can be transferred to a family member and will be valid for one year from finality of this Court's final approval of the Settlement.

The group whose damages are most difficult to quantify consists of the Class members who did not pay to upgrade and no longer own their vehicle. They receive a $750 certificate for the purchase of a new Mercedes-Benz, with the same terms as those in Group 2. The risk inherent in litigation is highest for this Group because of the difficulty its members would have in proving damages.

In view of the nature of the Settlement it is difficult to put a precise dollar value on it. However, Class counsel retained an expert to value the relief provided to the Class under the

11

Settlement. Using the most conservative methodology employed by the expert, which assigns zero value to the certificates for purchase of new Mercedes-Benz vehicles, the total settlement value us $24,593,900. Valuing the agreement under two alternative methodologies that afford some value to the certificate (but nothing close to 100% face value) and make different assumptions about how Group 2 Class members behave, results in valuations of $34,227,925 and $49,626,408). Even the most modest estimate of damages supports a finding of fairness, adequacy and reasonableness.

In summation, the Girsh factors weight heavily in support of approval of the Settlement.

## VI.   Class Representative Incentive Award

The parties have agreed to stipends of $5,000 each to the twelve Class representatives who sat for depositions, assisted with the investigation and responded to the extensive discovery requests. It is proper to recognize the time and effort of these persons expended on behalf of the absent members of the Class, and the sum of $5,000 to each representative is clearly reasonable McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 479-80 (D.N.J. 2008).

## V.   Attorneys Fees

Class counsel have submitted an uncontested motion for an award of $6,250,000 in attorneys' fees and out-of-pocket costs. This amount will be paid by MBUSA and was negotiated after the Class Settlement was agreed upon. Failure of the Court to award this amount will not affect the Settlement.

This was hard fought litigation, as described above, and there was no assurance the Plaintiffs would prevail or that Class counsel would receive any fees. The Settlement was a favorable one.

On April 11, 2008, the Court appointed Lieff Cabraiser, Heiman & Bernstein, LLP; Gerard, Gibbs LLP; and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC to serve as Interim Co-Lead Class counsel on behalf of Plaintiffs and the putative Class. The Court also appointed Trujillo, Rodriguez & Richards, LLC to serve as Interim Plaintiffs Liaison Counsel.

Counsel engaged in research and discovery as described above, conducted numerous depositions, retained experts, engaged in mediation and settlement discussions and are conducting the Settlement approval and implementation proceedings.

Courts in the Third Circuit assess attorneys' fees in class cases in one of two ways; the percentage of recovery method or the lodestar - multiplier method. The letter, which is the more appropriate method in the present case, multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate. The dollar value of the settlement here is too uncertain to calculate a percentage of recovery.

Counsel have submitted the time and costs of the four firms serving as co-lead and liaison counsel. The combined lodestar of those four firms is $3,863,619. Counsel have agreed not to seek reimbursement of out-of-pocket expenses currently amounting to approximately $493,787 for co-lead and liaison counsel and instead will reimburse those costs from the requested $6,250,000. These costs were reasonably incurred, and in the normal course would be reimbursed. In addition there is roughly $2.36 million in lodestar associated with the work performed by other Plaintiffs' counsel and almost $299,000 in costs incurred by such counsel.

In Exhibit B to the affidavit of Jonathan D. Selbin there appear the names, hourly rates and hours worked of the Lieff Cabraiser attorneys who worked on the case. The hourly rates of the partners who did significant amounts of work range from $855 to $500. The hourly rates of

13

associates who did significant amounts of work range from $475 to $370.

Comparable information is provided by the Carella, Byrne firm, where the hourly rates for partners range from $750 to $625 and for the associates is $560. For the Gibbs firm the hourly rates for partners range from $545 to $795 and for associates range from $345 to $445. For the Rodriguez firm the hourly rates for partners range from $525 to $600 and for associates range from $265 to $410.

These rates reflect the experience and skill of the lawyers involved and are comparable to rates the courts have approved in similar cases in other metropolitan areas. Most of the work that was performed was reflected in product produced in court proceedings or was actually performed in court. Much of this work is reflected in the description of this litigation that appears in the earlier portions of this opinion. The legal and factual issues were complex.

Lodestar multipliers of up to four have been awarded. In the present case, after reducing the requested fee of $6,250,000 by $493,787 in costs incurred by lead and liaison counsel, the resulting amount in fees is $5,756,213. That represents a multiplier of less than 1.5 from the reported $3,863,619 lodestar to date for co-lead and liaison counsel. The lodestar is lowered considerably if the work performed by all Plaintiffs' counsel is included.

Various factors that provide a basis for a multiplier are present in this case. There were novel class and substantive questions; the litigation imposed substantial financial risk on counsel; the attorneys who handled the case were particularly skilled by virtue of their ability and experience.

## VI.  Conclusion

For the reasons set forth above an order will be entered: 1) approving the Settlement Agreement as fair, reasonable and adequate, 2) approving attorneys' fees (which shall include the attorneys' costs and expenses) in the total amount of $6,250,000 and 3) approving payment of $5,000 to each of the twelve class representatives.

Dated: September 9, 2011                                      *s/ Dickinson R. Debevoise*
                                                               DICKINSON R. DEBEVOISE
                                                                         U.S.S.D.J.